Bernice T. Fleming, a widow, v. Cecil A. Turner, Cecil Watson, C. H. Crandon, J. L. Paxon and H. L. Cook, as and constituting The Board of County Commissioners for Dade County, and J. M. Lummus, Jr., as Tax Assessor of Dade County.

165 So. 353.
Opinion Filed December 3, 1935.
Rehearing Denied January 22, 1936.

*P. Robert G. Sjostrom,* for Appellant;
*Peters & Kemp,* for Appellees;

*D. A. Finlayson,* as *amicus curiae.*

CAMPBELL, Circuit Judge.—The appellant, as complainant in the court below, filed a bill in equity against the respondents seeking to enjoin them as the Board of County Commissioners of Dade County, Florida, and the Tax Assessor of said county, respectively, from levying and assessing any tax against her homestead for raising funds for debt service purposes in paying certain refunding bonds of Special Tax School District No. 2, and also certain county refunding bonds.

In substance, the bill alleges that the complainant is a widow, the head of a family residing upon certain real estate described in the bill of complaint, which she owns in fee simple, of the assessed value of $800.00; that she, with her dependent family, occupies the same as, and that it is her homestead; that she has filed with the Tax Assessor her claim for homestead exemption from all taxes on the property, as provided in Section 7, Article X, of the Constitution of Florida.

That prior to May 1st, 1934, Special Tax School District No. 2, in which complainant's homestead is situated, had outstanding $5,530,000.00 dollars of its bonds issued and delivered by the Board of Public Instruction of Dade County, Florida, prior thereto, said bonds being issued and delivered in all respects as provided in Article XII, Section 17, of the Constitution of Florida, and statutes enacted in pursuance thereof; that all said bonds were and constituted a valid and subsisting bonded debt of the said Special Tax School District.

That for the purpose of refunding the principal of the said bonded debt for Special Tax School District No. 2, the Board of Public Instruction for the County of Dade, State of Florida, executed a like amount of refunding bonds,

known as Series A Bonds, and for the purpose of refunding outstanding and unpaid interest coupons upon said bonds to May 1st, 1934, in the amount of $173,000.00 did execute bonds for such amount, of Series B Bonds. Each series of said refunding bonds having been issued by the Board of Public Instruction for Dade County, Florida, for and on behalf of Special Tax School District No. 2 under the authority of, and in full compliance with the General Refunding Act of 1931, being Chapter 15,772, General Laws of Florida, Acts of 1931; that each and every of said refunding bonds contains a recital as a part and parcel of the obligation thereof, that the full faith and credit of the Special Tax School District No. 2 are pledged irrevocably for the prompt payment of said bonds, and the interest thereon, as same fall due, and that provision has been made for the levy and collection of a direct annual tax upon *all* taxable property within said district sufficient to pay the principal and interest of said bonds as the same shall fall due. That on May 24, 1934, said issues of refunding bonds were legally validated, a copy of a bond of each series being attached to the bill of complaint and made parts thereof. The adoption and ratification on November 6, 1934, of the Homestead Tax Exemption Amendment to the Constitution of Florida, (Section 7, Article X, thereof) as set forth in the allegations of the bill of complaint wherein, as alleged in the bill of complaint, there is exempted from *all* taxation except special assessments for benefits, to every head of a family who is a citizen and resides within the State of Florida, a homestead as defined in Article X of the Constitution of Florida, up to the valuation of $5,000.00. The bill of complaint then alleges "That her said real estate is a homestead as so defined by the Constitution and exempted from all taxation *save and except taxes for servicing bonds outstand-*

*ing prior to the adoption of said amendment,"* and that she regularly filed her claim for homestead exemption upon said property, with the tax assessor, claiming exemption thereof from taxation for the year 1935-36.

It is further alleged in the bill of complaint that prior to November 6, 1934, being the effectual date of said homestead amendment, the board of public instruction pursuant to a refunding program *did deliver in exchange for said original outstanding bonds and attached coupons,* approximately $4,277,250.00 thereof; that subsequent to said date the said Board of Public Instruction has *exchanged* for *said original bonds* with attached *coupons,* and delivered to the holders' thereof a large amount of said Series A and Series B, refunding bonds which remained undelivered upon the 6th day of November, A. D. 1934, the exact amount of such refunding bonds, delivered subsequent to said November 6th, 1934, being to the complainant unknown, but complainant avers that a sufficient amount thereof has been so subsequently delivered as to substantially increase taxes in said Special Tax School District No. 2, to service the same; that if this complainant's homestead is subject to taxation for such servicing of said bonds delivered subsequent to the effective date of said homestead amendment, complainant's' taxes will increase thereby.

It is further shown by the allegations of the bill of complaint that prior to April 1st, 1933, Dade County, Florida, had outstanding $1,930,000.00 of its bonds, executed and delivered to holders thereof under the authority and in full compliance with the Constitution and the laws of the State of Florida, the same constituting a valid and subsisting bonded debt, for which was pledged the full credit of the county, and provision made for the levy and collection of a direct annual tax upon all taxable property within said

county for the payment of the principal and interest thereof, as same became due. It is further alleged that for the purpose of refunding the county bonds referred to above, the county commissioners of said county executed $1,930,000.00 in *refunding bonds* under the authority of and in full compliance with the General Refunding Act of 1931, and that these refunding bonds were validated as required by law. It further appears from the allegations of the bill of complaint that on November 6, 1934, the county commissioners of Dade County, Florida, had not completed said refunding program, and that approximately $690,000.00 of said refunding bonds remained in the hands of the said Board, *unexchanged* and *undelivered;* that subsequent to the said date the Board of County Commissioners *has delivered to the holders* of *said original bonds,* a large amount of said refunding bonds in *exchange for original bonds,* the exact amount of such subsequently delivered bonds being unknown to the complainant; but complainant avers that a sufficient amount of said refunding bonds has been delivered subsequent to the effective date of said constitutional amendment to substantially increase taxes on each and every item of property, subject to be taxed, to service the same.

The bill further alleges that on the 7th of May, A. D. 1935, the respondents, the Board of County Commissioners of Dade County, Florida, adopted a resolution wherein and whereby the said Board of County Commissioners, being the tax levying authority in Dade County, Florida, declared their intention to levy taxes for the servicing of all said Special Tax School District, and also of all county refunding bonds of Dade County, Florida, for and during the fiscal year 1935-36 and each year thereafter, including such refunding bonds of both units as were delivered subsequent to November 6, 1934; that in levying taxes to service said

bonds the said Board declared in and by its resolution that it was the purpose and intent to include homesteads as defined in Article X of the Constitution in the taxable property for such purpose and further declared that in computing taxes to be levied for such purpose the said Board will include in the basis of such computation all homesteads within Special Tax School District No. 2 and in the county at large without allowing deductions therefrom for exemptions.

It is further alleged that the respondent Tax Assessor of Dade County, Florida, has declared in a letter written by him to the complainant, that it is his purpose and intent to assess all property for debt service, including the amount necessary to take care of refunding bonds delivered subsequent to November 6, 1934, by assessing and extending taxes against all properties including homesteads upon the tax roll for 1935 and his intention to follow the plan and theory of the Board of County Commissioners, as revealed in the resolution, to levy, assess and cause to be collected taxes upon homesteads without any deductions therefrom for exemption for the purpose of servicing refunding bonds delivered to holders thereof subsequent to the effective date of the Homestead Exemption Amendment.

The relief prayed for in the bill is that the court enter a restraining order enjoining the respondents, County Commissioners of Dade County, Florida, from including complainant's homestead in property to be taxed for the fiscal year 1935-36 for the purpose of paying the interest or principal of any of the Special Tax School District No. 2. Refunding Bonds of the issue May 1, 1934, delivered by the Board of Public Instruction to bondholders subsequent to November 6, 1934, or for the purpose of paying interest or principal of any of said Dade County Refunding Bonds,

of the issue of April 1, 1933, delivered by the Board of
County Commissioners to bondholders subsequent to No-
vember 6, 1934, and enjoining the respondents Board
of County Commissioners from including complainant's said
homestead in the computation of taxes or in any compu-
tation to determine the rate of taxation for said fiscal year
for servicing any of said refunding bonds delivered to bond-
holders by either of said Boards, subsequent to November
6, 1934, and enjoining the defendant Tax Assessor from
assessing any or extending any tax upon the tax roll of
said county against complainant's said homestead for the
fiscal year 1935-36 for the bond service purposes mentioned.
The respondents filed a joint answer to the bill of com-
plaint, in which they admitted the allegations of paragraph
1 to 6 of the bill of complaint, and as to paragraph 7,
they say:

"Answering paragraph 7, these respondents admit the
allegations thereof save and except the averment therein
contained, that the levy of the taxes upon complainant's
homestead for the purposes alleged will violate complain-
ant's constitutional right as guaranteed by Section 7, Ar-
ticle X of the State Constitution, or any other constitutional
right which complainant may have."

The case was set down for final hearing on bill and
answer, upon complainant's motion, the chancellor ren-
dered final decree setting forth his findings upon the facts
alleged in the pleadings, denying the relief sought and dis-
missing the bill of complaint. The complainant having ap-
pealed from the final decree assigns one error which is as
follows:

"The court erred in entering the final decree denying
the injunction prayed for in and by Complainant's bill of
complaint and dismissing said cause, said decree being

dated July 3, 1935, and recorded in Chancery Order Book No. 360 at page 5 in the office of the Clerk of the Circuit Court."

We have before us a case wherein the question to be determined is the effect of the "Homestead Tax Exemption Amendment" to the Constitution of Florida (Section 7, Article X) upon the right to levy and assess tax upon homesteads of less than $5,000.00 valuation for debt service on refunding bonds, executed prior to but delivered to bondholders subsequent to the effective date of the adoption of such Constitutional Amendment. It is admitted in the allegations of the bill of complaint as also in the brief filed by the appellant that complainant's homestead is liable to taxation for debt service upon the refunding bonds delivered prior to November 6, 1934, the effective date of the Homestead Tax Exemption Amendment.

In appellant's brief, the question presented by this appeal is stated to be:

"Does the Homestead Tax Exemption Amendment to the Constitution (Article X, Section 7) relieve the homestead of a Florida resident who is the head of a family, from taxation to pay refunding bonds authorized and executed to fund a bond indebtedness outstanding before the amendment was adopted but delivered and accepted after it became effective, when both the assessed and actual value of the homestead is less than Five Thousand ($5,000.00) Dollars?"

We believe the question presented by the facts as stated in the pleadings may be more correctly stated as follows:

"Does the Homestead Tax Exemption Amendment to the Constitution (Article X, Section 7) relieve the homestead of a Florida resident who is the head of a family, from taxation to pay refunding bonds authorized and executed, to

fund a bond indebtedness outstanding before the amendment was adopted but delivered to the holders of the original bonds after the amendment became effective, when both the assessed and actual value of the homestead is less than Five Thousand ($5,000.00) Dollars"?

According to the allegations of the bill of complaint, a refunding program or plan for Special Tax School District No. 2 was instituted in May, 1934, the refunding bonds validated and executed and a large amount delivered to the holders of original bonds in exchange for such original obligation prior to the adoption on November 6th, 1934, of Section 7, Article X, of the Constitution of the State of Florida and known as the "Homestead Tax Exemption Amendment." The same is true with reference to the refunding program adopted by Dade County in April, 1933. The county refunding bonds were authorized, validated and executed months prior to November 6, 1934, and many of these bonds delivered to and accepted by holders of original bonds in exchange for such original obligations, prior to such date. It also alleged that subsequent to November 6, 1934, the date of the adoption of the "Homestead Tax Exemption Amendment," the county authorities delivered large amounts of each of such issues to bondholders in exchange for original bonds for the same amount. It appears that all the refunding bonds described in the bill of complaint as being delivered both before and after the adoption of Section 7, Article X of the Constitution of Florida, were delivered to bondholders in exchange for original outstanding bonds to refund which such refunding bonds were authorized. There are no allegations in the bill of complaint that any bonds of either of the issues of the refunding bonds in question were issued to *new purchasers,* in the open market, or sold and delivered to anyone other than a

holder of an original bond for the refunding of which these refunding bonds were authorized and issued; therefore the question whether or not homesteads otherwise exempt are liable to taxation for debt service on refunding bonds sold and delivered on the open market after the adoption of Section 7, Article X of the Constitution of Florida for new and different money, the original bonds having been issued and in existence before such constitutional provision for exempting homesteads from all taxation became effective, is not before us.

As already said, the complainant concedes by the allegations of her bill of complaint, that her homestead is liable to be taxed for debt service on all the refunding bonds delivered prior to the adoption of the Constitutional provision exempting homesteads of a value less than $5,000.00 from *all* taxations, this is conceded because when such bonds were issued the law provided and it became part. of the obligation of the bond contract, that there should be a levy of a tax upon *all* the taxable property not then exempt in the taxing unit, to provide funds for the payment of the principal and interest of such bonds, and that under the provisions of Section 10, Article I of the Constitution of the United States, the later constitutional provision in the State, exempting Homesteads was in operation to relieve a homestead from liability for such tax. The appellant contends that the refunding bonds delivered subsequently to the effective date of the Homestead Tax Exemption Amendment, were not issued or did not become contracts carrying enforceable obligations until after such *delivery* and *acceptance* by the party to whom they were exchanged, and that therefore the issuance of such bonds, and the acceptance thereof consummating and completing the contract obligations of such refunding bonds was made when, under the

Constitution of Florida, homesteads of such value as hers were exempt from taxation for debt service upon such bonds. It is the opinion of the writer of this opinion that there is merit in such contention.

In the case of Folks v. Marion County, 163 So. 298, this court was considering an appeal from a validation proceeding involving refunding bonds of Marion County, authorized after the adoption of Section 7, Article X of the Constitution of Florida. The resolution authorizing the execution and sale of the refunding bonds of Marion County, involved in the Folks case provided in Section 7 thereof as follows:

"In each year while any of said refunding bonds shall be outstanding there shall be levied upon all property within the county of Marion except *only such property as would be exempt from taxation under the provisions of the laws and Constitution of Florida, which were in force at the time of the creation of the indebtedness refunded,* a tax sufficient to pay the interest upon such bonds as the same shall fall due and to make the sinking fund payments required by the resolution, etc. (Italics supplied.)

The same resolutions from which Section 7 thereof has been quoted above provided in Section 15 thereof:

"For the prompt payment of the principal and interest of the Refunding Road Bonds, Series B, as the same shall fall due, issued pursuant to this resolution, the full faith, credit and *taxing power* of said county of Marion are hereby irrevocably *pledged to the same extent* and with like *force and effect as the same was here pledged for the payment of the indebtedness refunded by said bonds."* (Italics supplied).

A similar provision to that just quoted from the resolu-

tion was also incorporated in and made a part of each of the bonds involved in the Marion County case.

In the above opinion written for this Court by Mr. Justice Brown in the case of Folks v. Marion County above referred to we said: "As between Marion County and the holders of its bonds issued in 1920, an exchange of the refunding bonds for a like amount of old bonds delivered up for cancellation, *with the agreement that the same security in the way of taxing power which was behind the old bonds, shall continue as security for the payment of the new bonds,* is valid and enforceable." 163 So. 306 (text). (Italics supplied.)

The holding of the court in the Folks v. Marion County case is summarized in headnote two, 163 So. 298, as follows:

"Constitutional amendment exempting homesteads from taxation held not to affect county refunding bonds proceeds of which were to be applied to original indebtedness or refunding bonds which were to be exchanged for old bonds, *where tax on all property except that which was exempt at time of original indebtedness was pledged for payment of refunding bonds and original indebtedness was outstanding at time of constitutional amendment."* (Italics supplied.)

There is this distinction between the provision for taxation for debt service for the refunding bonds made in the resolution of the board of county commissioners, and incorporated in refunding bonds, in the Folks v. Marion County case, and the provision concerning taxation for debt service in the resolution and the refunding bonds in the instant case. While the resolutions adopted by the board of public instruction, providing for the refunding bonds to be issued for Special Tax School District No. 2 in Dade County, and the property therein designated to be taxed for debt service on the issue is not exhibited in the record

before us, and while there seems also to be no copy of the resolution of the county commissioners of Dade County authorizing the refunding bonds of the county, yet the provision incorporated in the copies of a bond from each of the refunding issues contains the following provision regarding the tax to be levied for the payment of the bonds, to-wit: "that provision has been made for the levy and collection of a direct annual tax upon all taxable property within the District sufficient to pay the principal and interest on this bond as the same shall fall due." In the county refunding bond the provision for the tax levy is the same except it provides for the levy and collection of a direct annual tax upon all taxable property *in the county* sufficient to pay the principal and interest, etc.

It is seen that there is nothing in the provisions for taxation incorporated in these bonds to show that taxable property, as set forth therein, was to be the same as that which was, under the constitution and law, taxable when the bonds to be retired were issued.

The issuance of these refunding bonds was not consummated or completed until their delivery in exchange for original bonds. Upon such delivery the obligations of the bonds as fixed by the constitution, the law, the provisions of the resolutions authorizing the bonds, and the bonds themselves, are determined. Unless it is provided and made a part of the obligation of these bonds by resolution of the taxing authorities and the bonds themselves that the tax for debt service shall be on property taxable at the time of the issuance of the original bonds, subject only to exemptions then provided, there could be levied and assessed a tax only on all taxable property at the time of the delivery of such bonds, even though they are exchanged for original bonds.

In several cases we have held that under the provision of Section 6, Article IX of the Constitution of the State and the General Refunding Act of 1931, refunding bonds are authorized extensions and continuations of the obligations represented by the bonds to be refunded by them. In these cases we were considering the right for taxing units to issue refunding bonds without authority being granted by the vote of the qualified electorate. Refunding bonds under these holdings and under the law, do not increase the debt of the taxing unit, and are therefore valid obligations regardless of whether they are authorized by the electorate or not. But unless it is provided by the resolutions of the taxing units in authorizing such bonds, and in the face of such bonds, that the taxable property at the time of the issuance of the original bonds shall continue to be taxed for debt service on the new or refunding bonds then the law and the constitution when such refunding bonds are issued will, in our opinion, control. There being no provision in the refunding bonds involved in this case that the property taxable when the original bonds were issued shall be taxed for debt service thereon as was done in the case of Folks v. Marion County, *supra,* then there would be no authority to tax complainant's homestead for debt service; as Section 7, Article X, of the Constitution and the law enforcing its provision, with which it appears the complainant has complied, would exempt the homestead from taxation as to such of the bonds as were issued by delivery after adoption of Section 7, Article X, of the Constitution.

We think therefore that the court below erred in denying the relief prayed for in the bill of complaint, and in dismissing the bill.

The decree of the court below is therefore reversed.

WHITFIELD, C. J., and TERRELL, BROWN and DAVIS, J. J., concur.

BUFORD, J., concurs in the conclusion.

## ON PETITION FOR REHEARING

DAVIS, J.—The suggestion has been pressed upon us by a petition for rehearing in this case that, in our holding: "Unless it is provided and made a part of the obligation of these bonds by resolution of the taxing authorities *and the bonds themselves* that the tax for debt service shall be on property taxable at the time of the issuance of the original bonds, subject only to exemption then provided, there could be levied and assessed a tax only on all taxable property at the time of the delivery of such bonds, even though they are exchanged for original bonds," (Emphasis supplied) the words "and in the bonds themselves," appearing in the foregoing extract quoted from our previous opinion of December 2, 1935, have become subject to the interpretation that (contrary to the general rule) the "provisions" of the authorizing resolution providing for the issuance of special tax school district refunding bonds would not become a part of the ordinary obligation of the bond contract unless such "provisions" are made to appear in the face of the bonds themselves, and that such implication, being contrary to general rules of municipal bond law, has resulted in unsettling the Florida law on that subject, and that the confusion and misapprehension that has resulted from our opinion should be clarified by some further statement from this Court as to exactly what was intended by the words above referred to.

The point to be stressed in reply to the suggestion of confusion and misapprehension that has been called to our attention is that there is nothing in our opinion which was in-

tended as a holding that "the provisions of the authorizing resolution" relating to the nature of the *ordinary* obligations incurred should be copied or recited *at length* on the face of the bonds themselves.

What the court meant was that *some* reference or recital should be made on the face of the bonds sufficient to distinguish and identify the refunding bonds as special renewals of the old indebtedness on the same conditions as pertained to the debt theretofore existing, when it is intended that such bonds be construed to have, as refunding bonds, the same attributes as obligations that the old bonds themselves had before the refunding bonds were issued as substitutes for them.

How this is best to be accomplished is a matter of draftsman technique with which this court has no concern at the present time.

The sole point here made is that something more than the formal and ordinary reference to the bond authorizing resolution is required to be stated *on the face of the bonds issued* if they are to be construed as mere continuations of the old debt on its pre-existing conditions as to the nature of obligation retained. This is required in order that the courts, when called on to enforce such bonds, may by that means identify and distinguish the bonds on their face as being refunding bonds issued under the special and peculiar Federal and State Constitutional provisions upheld as authorizing that kind of an obligation to continue to be issued, notwithstanding Section 7 of Article X of the State Constitution.

In this connection it is to be observed that the general rule is that where bonds are issued under special and peculiar constitutional or statutory authority to make a promise therein of exceptional quality or character, the *promise* to

that effect must be referred to or set forth in the bonds themselves as well as in the authorizing proceedings, if it is to be judicially recognized. See Section 1, Jones on Bonds and Bond Securities, page 235, *et seq.,* paragraph 240.

Rehearing denied.

WHITFIELD, C. J., TERRELL, J., and CAMPBELL, Circuit Judge, concur.

BUFORD, J., concurs specially.

BUFORD, J. (concurring specially).—I concur in this as a statement of what was meant by the language used in the original majority opinion.