STATE v. CITY OF ORLANDO.

170 So. 887.
Opinion Filed November 21, 1936.

*Murray W. Overstreet,* State Attorney, for Appellant;

*R. Paul Horrell* and *Merton S. Horrell,* for Appellee.

DAVIS, J.—This was a proceeding to validate two issues of refunding bonds of the City of Orlando. One issue is in the amount of $2,701,000.00 designated "Refunding Bonds of 1937—Class A"; the other is in the amount of $520,-000.00 designated "Refunding Bonds of 1937—Class B." Both issues purport to be authorized under the 1931 Florida General Refunding Act, Chapter 15772, Acts 1931. Each issue will bear interest at a rate not to exceed 4¼% per annum to be fixed by competitive bidding. The bonds will mature serially. All of the bonds proposed to be refunded represent a bonded indebtedness of the City of Orlando that was outstanding and unpaid on November 6, 1934, the date of ratification as part of the Florida Constitution of additional Section 7 of Article X, commonly known in this jurisdiction as the "Homestead Tax Exemption Amendment."

The principal controversy respecting the validation decree entered in the court below is whether or not the tax exemption provisions of additional Section 7 of Article X of the Constitution for the benefit of "homesteads" will be applicable to the new Refunding Bonds now proposed to be

issued and sold for the purpose of calling and retiring, *at a lower rate of interest,* an indebtedness represented by older bonds outstanding at the time the said "Homestead Tax Exemption Amendment" was ratified and became a part of the State Constitution.

The lower court decreed that refunding bonds so issued, will not be affected by the "Homestead" tax exemption contained in additional Section 7 of Article X. The State's Attorney of the Ninth Circuit representing the taxpayers of the City of Orlando, has prosecuted this appeal from that holding.

One of the authorizing resolutions upon which the refunding plan is predicated reads as follows:

"A RESOLUTION ENTITLED:

"A RESOLUTION PROVIDING FOR THE ISSUANCE BY CITY OF ORLANDO, FLORIDA, OF REFUNDING BONDS IN THE AMOUNT OF $2,701,000.00, TO BE KNOWN AS 'REFUNDING BONDS OF 1937, CLASS A.'

"1. *Whereas,* bonds issued by the City of Orlando, each in the principal sum of $500.00, dated February 1, 1932, known as Water Works and Electric Light Refunding Bonds, numbered 1 to 138, both numbers inclusive, and 151 to 300, both numbers inclusive, of Series A, bearing interest at the rate of five and one-half per cent. per annum; and

"Bonds issued by City of Orlando, each in the principal sum of $1,000.00, dated February 1, 1932, known as Water Works and Electric Light Refunding Bonds, numbered 1 to 42, both numbers inclusive, 46 to 100, both numbers inclusive, and 111 to 119, both numbers inclusive, of Series B, bearing interest at the rate of five and one-half per cent. per annum; and

"Bonds issued by City of Orlando, each in the principal sum of $500.00, dated February 1, 1932, known as General Refunding Bonds, numbered 1 to 20, both numbers inclusive, 22 to 44, both numbers inclusive, 76 to 177, both numbers inclusive, 199 to 328, both numbers inclusive, 336 to 357, both numbers inclusive, 401 to 402, both numbers inclusive, 432 to 440, both numbers inclusive, 457 to 472, both numbers inclusive, of Series A, bearing interest at the rate of five per cent. per annum; and

"Bonds issued by City of Orlando, each in the principal sum of $500.00, dated February 1, 1932, known as General Refunding Bonds, numbered 1 to 41, both numbers inclusive, 71 to 130, both numbers inclusive, 141 to 160, both numbers inclusive, 170 to 270, both numbers inclusive, of Series B, bearing interest at the rate of five and one-half per cent. per annum; and

"Bonds issued by City of Orlando, each in the principal sum of $1,000.00, dated February 1, 1932, known as General Refunding Bonds, numbered 1 to 290, both numbers inclusive, 301 to 800, both numbers inclusive, 804 to 1200, both numbers inclusive, 1294 to 1474, both numbers inclusive, 1499 to 1548, both numbers inclusive, 1566, 1589, to 1598, both numbers inclusive, 1606 to 1619, both numbers inclusive, 1663 to 1671, both numbers inclusive, 1681 to 1715, both numbers inclusive, 1848, 2101, 2301, to 2600, both numbers inclusive, 2602, to 2954, both numbers inclusive, of series C, bearing interest at the rate of five per cent. per annum; and

"Bonds issued by City of Orlando, each in the principal sum of $1,000.00, dated February 1, 1932, known as General Refunding Bonds, numbered 1 to 36, both numbers inclusive, of Series D, bearing interest at the rate of five and one-half per cent. per annum;

"All in the aggregate sum of $2,701,000.00 are outstanding and unpaid; and

"2. *Whereas,* all of the above described bonds are now outstanding and constitute valid and legally binding obligations of City of Orlando for the payment of which the full faith and credit of City of Orlando is pledged, said bonds having been duly issued pursuant to and in full compliance with the Constitution and Statutes of the State of Florida; and

"3. *Whereas,* all of the above described bonds were issued prior to November 6, A. D. 1934, and had pledged to their payment taxation upon the homesteads as well as upon other taxable property in City of Orlando; and

"4. *Whereas,* none of said bonds has ever been adjudicated by any Court of the State of Florida or of the United States to be invalid and no litigation is pending or threatened in any manner questioning or involving the validity thereof, and the interest on said bonds has always been regularly paid when due, and all of said bonds were duly validated by decree of the Circuit Court of the Seventeenth Judicial Circuit of Florida, in and for Orange County; and

"5. *Whereas,* notwithstanding that all of said bonds will become due and payable on February 1, 1952, City of Orlando has reserved the right to redeem any or all of said bonds on any interest payment date on or after February 1, 1933, to be chosen by lot conducted by the City Council, on payment of the par value thereof together with accrued interest to the date fixed for redemption, upon notice of intention to redeem given by one publication thereof prior to the date set for redemption in a financial journal or newspaper of general circulation in the United States of America, published in the City of New York, and by filing a

written copy thereof at the place of payment specified in said bonds, said publication and filing to be made at least 60 days prior to the date set for redemption.

"6. *Whereas,* each and all of said bonds were issued pursuant to a resolution adopted by the City Council on March 30, 1932, and there are no moneys in the Sinking Fund created and established by said resolution for the payment of said bonds available for the payment of the principal thereof.

"7. *Whereas,* it is to the best interest of the taxpayers of City of Orlando that bonds bearing a lower rate of interest should be issued and sold and the proceeds therefrom applied to the redemption of the bonds hereinabove described; and

"8. *Whereas,* said bonds are in such form that they may be refunded by the issuance of refunding bonds under the authority of Chapter 15772, Laws of Florida, 1931, and the City Council of Orlando deems it advisable and to the best interest of the taxpayers of City of Orlando and that it is necessary to issue refunding bonds in the amount of $2,701,000.00, being the aggregate of the various amounts of bonds set forth in paragraph 1 hereof.

"Now, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF CITY OF ORLANDO, FLORIDA:

"9. That the recitals hereinabove contained are true and correct.

"10. That pursuant to and in conformity with the provisions of Chapter 15772, Laws of Florida, 1931, there shall be issued $2,701,000.00 Refunding Bonds of 1937 Class A of City of Orlando, Florida, dated February 1, 1937. Said Refunding Bonds of 1937 Class A shall be in the denomination of $1,000.00 each, shall bear interest at a rate not to

exceed four and one-quarter per cent. (4¼%) per annum and shall be numbered 1 to 2701, both numbers inclusive. Interest on said bonds shall be payable semi-annually on February first and August first in each year and said bonds shall become due and payable as follows:

```
   1 to  120, both incl., on February 1, 1938.
 121 to  240, both incl., on February 1, 1939.
 241 to  360, both incl., on February 1, 1940.
 261 to  480, both incl., on February 1, 1941.
 481 to  500, both incl., on February 1, 1942.
 501 to  620, both incl., on February 1, 1943.
 621 to  690, both incl., on February 1, 1944.
 691 to  815, both incl., on February 1, 1945.
 816 to  940, both incl., on February 1, 1947.
 941 to 1065, both incl., on February 1, 1948.
1066 to 1190, both incl., on February 1, 1949.
1191 to 1315, both incl., on February 1, 1950.
1316 to 1440, both incl., on February 1, 1951.
1441 to 1565, both incl., on February 1, 1953.
1566 to 1640, both incl., on February 1, 1954.
1641 to 1765, both incl., on February 1, 1955.
1766 to 1890, both incl., on February 1, 1956.
1891 to 2015, both incl., on February 1, 1957.
2016 to 2140, both incl., on February 1, 1958.
2141 to 2265, both incl., on February 1, 1959.
2266 to 2390, both incl., on February 1, 1960.
2391 to 2540, both incl., on February 1, 1961.
2541 to 2701, both incl., on February 1, 1962.
```

"11. BE IT FURTHER RESOLVED, That said bonds shall be issued in coupon form and shall be privileged to registration as to principal only and both principal and interest thereof shall be payable in lawful money of the United States of

America and shall be payable at Central Hanover Bank and Trust Company in the City of New York, State of New York, or at the office of the Comptroller of City of Orlando in the City of Orlando, State of Florida, at the option of the holder. Said bonds shall be signed in the name of City of Orlando, Florida, by its Mayor and attested by its City Clerk and shall bear the seal of said City. The coupons attached to said bonds shall be executed in the name of City of Orlando, Florida, with the facsimile signatures of said officers and said officers shall by the execution of said bonds be deemed to have adopted on behalf of said City as and for due and sufficient authentication of the coupons attached to said bonds, their respective facsimile signatures appearing on said coupons. Said bonds and coupons shall be in substantially the following form, to-wit:

"UNITED STATES OF AMERICA.
"STATE OF FLORIDA.
"COUNTY OF ORANGE.
"CITY OF ORLANDO.
"REFUNDING BONDS OF 1937, CLASS A.

"No............................            $1,000.00.

"City of Orlando, a municipal corporation duly organized and existing under and by virtue of the laws of the State of Florida, is justly indebted and for value received, hereby promises to pay to the bearer hereof or to the registered owner, should this bond be registered, ONE THOUSAND DOLLARS ($1,000.00) on the 1st day of February, 19....., together with interest thereon at the rate of....per cent. (....) per annum on the 1st day of February and August in each year. Both principal and interest of this bond are payable in lawful money of the United States of America and are payable at the Central Hanover Bank and Trust Company in

the City of New York, State of New York, or at the office of the Comptroller of City of Orlando in the City of Orlando, State of Florida, at the option of the holder, upon presentation and surrender of bond or proper coupon. For the prompt payment of the principal and interest hereof as the same respectively become due and for the levy and collection of taxes sufficient therefor, the full faith, credit and taxing power of City of Orlando are hereby irrevocably pledged to the same extent with like force and effect as the same were pledged for the payment of the indebtedness refunded hereby.

"This bond is issued for the purpose of refunding valid and legally binding and outstanding bonded indebtedness of City of Orlando, Florida, incurred prior to and outstanding on November 6, A. D. 1934, to the payment of which the full faith and credit of said City is pledged, and under the authority of and in full compliance with the Constitution and Statutes of the State of Florida, including among others, Chapter 15772, Laws of Florida, 1931, and pursuant to resolutions and proceedings of the City Council of said City duly adopted and taken.

"It is hereby certified, recited and declared that all acts, conditions and things required by the Constitution and laws of the State of Florida to exist, to happen and to be performed, precedent to and in the issuance of this bond, and precedent to and in the issuance of the outstanding bonds hereby refunded, did exist, have happened and have been performed in regular and due form, time and manner, as required by law; that the obligations hereby refunded are valid outstanding obligations of said City, issued within all constitutional and statutory limitations of indebtedness; that provision has been made for the levy and collection of a direct annual tax upon all property within said City, ex-

cept only such property as would be exempt from taxation under the provisions of the laws and Constitution of Florida which were in force and effect at the time of the creation of the indebtedness refunded hereby sufficient to pay the principal and interest of this bond as the same shall fall due, which tax shall be levied and collected at the same time and in the same manner as *ad valorem* taxes levied for operating expenses of said City; and that the indebtedness refunded hereby is merged into this bond with like force and effect as to obligation as if such indebtedness had remained unrefunded.

"In WITNESS WHEREOF the City of Orlando has caused this bond to be signed in its name by its Mayor and this bond attested and the corporate seal of said City affixed by its Clerk, the interest coupons hereto attached to be executed in the name of said City with the facsimile signatures of said officers, and this bond to be dated the first day of February, 1937.

"(SEAL).                         CITY OF ORLANDO, FLORIDA.

"Attest :.............................          By..............................
      City Clerk.                        Mayor

"(FORM OF COUPON)

"No............................                         $............................

"City of Orlando, Florida, hereby promises to pay to bearer on the 1st day of.................., 19...., at Central Hanover Bank and Trust Company in City of New York, State of New York, or at the office of the Comptroller of City of Orlando, in the City of Orlando, State of Florida, at the option of the holder, .....................DOLLARS ($.....................) in lawful money of the United States of America, the same

being six months' interest then due on its Refunding Bond of 1937 Class A, dated February 1, 1937, and numbered.........

"CITY OF ORLANDO, FLORIDA.

"Attest :.................................... - By.......................................
      City Clerk.        -      Mayor.      :

"(FORM OF VALIDATION CERTIFICATE TO BE ENDORSED ON BOND).

"Validated and confirmed by decree of Circuit Court of the Ninth Judicial Circuit of the State of Florida, in and for Orange County, rendered the.........day of................., A. D. 1936.

".........................................................................

             "Clerk, Circuit Court,
             "Ninth Judicial Circuit,
             "Orange County, Florida.

"12. BE IT FURTHER RESOLVED, That in each year while any of said bonds are outstanding and unpaid there shall be assessed, levied and collected annually upon all property in City of Orlando, at the same time and in the same manner as other taxes of City of Orlando, are assessed, levied and collected, except only such property as would be exempt from taxation under the provisions of the laws and Constitution of Florida which were in force and effect at the time of the creation of the indebtedness hereby refunded, a special tax sufficient for the payment of the principal and interest of said bonds as the same respectively become due and payable; provided, however, that such amount to be levied, assessed and collected upon the taxable property within the said City as set forth herein may, in the discretion of the City Council of said City, be reduced by the amount of any special assessments collected applicable to

the payment of the bonds described in paragraph 1 hereof, which are to be refunded from the funds derived from the sale of the refunding bonds authorized by this Resolution to be issued. The tax so levied shall be in addition to all other taxes levied by City of Orlando and shall be in an amount sufficient to produce the requisite amounts computed on the estimated tax collections in City of Orlando for the three years immediately preceding that in which the said tax is levied. The City of Orlando covenants that it will not accept payment of taxes levied for operating expenses of said City unless there is paid at the same time the tax levied to pay the interest on and to provide a sinking fund for the payment of principal of the bonds issued under the provisions of this resolution.

"13. Be It Further Resolved, That the City Council of City of Orlando hereby agrees to assign, pledge or set aside as a trust for any deficiency in the collection of taxes for the payment of the principal of and interest on the bonds hereby authorized, subject to prior liens and contract obligations, any unpaid taxes or assessments available for the payment of the indebtedness hereby refunded.

"14. Be It Further Resolved, That there is hereby pledged to the payment of the principal of and interest on these bonds collections or proceeds of any or all uncollected special assessments applicable to the payment of the principal of and interest on these bonds or the bonds to refund which these bonds were authorized to be issued, subject, however, to any other outstanding pledge of special assessments heretofore made.

"15. Be It Further Resolved, That said refunding bonds may be delivered as provided by law at any time regardless of the date of maturity or optional dates of redemption of the obligations refunded, upon surrender by

the holder of a like amount of the obligations refunded, such exchange of bonds to be on the basis of par for par and proper adjustment of accrued interest; or in the discretion of the City Council said bonds may be sold at public sale pursuant to due publication of a notice of such sale at a price not less than ninety-five per cent. (95%) of par and accrued interest to date of delivery of said bonds, all as provided by Chapter 15772, Laws of Florida, 1931.

"16. BE IT FURTHER RESOLVED, That if any clause, section, paragraph or provision of this resolution or of the Refunding Bonds hereby authorized be declared unenforceable by any Court of final jurisdiction, it shall not affect or invalidate any remainder thereof, and if any of the Refunding Bonds hereby authorized be adjudged illegal or unenforceable, the holders thereof shall be entitled to be subrogated to the rights of the holders of the indebtedness hereby provided to be refunded thereby and as such enforce their claim for payment.

"17. BE IT FURTHER RESOLVED, That the City Solicitor is hereby authorized and directed to take proper proceedings for the validation of the refunding bonds authorized by this Resolution to be issued.

"18. BE IT FURTHER RESOLVED, That all resolutions or parts of resolutions in conflict herewith be and the same are hereby repealed.

"19. BE IT FURTHER RESOLVED, That this Resolution shall take effect immediately upon its adoption."

The resolution pertaining to the second issue of refunding bonds hereinbefore described as "Class B" was to the same tenor and effect.

The validating decree entered by the Circuit Court involving the two refunding bond issues in controversy, among other things held:

"3. That the procedure for the issuance of said outstanding bonds was in all respects legal, and that said bonds were lawfully issued.

"4. That all of said outstanding bonds proposed to be refunded constitute valid subsisting legal indebtedness of City of Orlando.

"5. That under the Constitution and laws in force at the time of the issuance of the bonds proposed to be refunded by Refunding Bonds of 1937 Class A in the amount of $2,701,000.00, homesteads were subject to taxation for the payment of principal and interest on said bonds and taxes levied for such purposes were required to be collected and paid in cash at the same time and in the same manner as taxes levied for current expenses of the City and such requirements pertain to the character and extent of the legal obligation of the bonds and constitute a material part of the contract with the bondholders.

"That the bonds proposed to be refunded by bonds to be known as Refunding Bonds of 1937 Class B evidenced obligation of City of Orlando for the payment of the principal of and interest on which, under the Constitution and laws in force at the time said obligations were incurred, homesteads were subject to taxation and taxes levied for such purposes were required to be collected and paid in cash at the same time and in the same manner as taxes levied for current expenses of the City and such requirements pertain to the character and extent of the legal obligations of the bonds and constitute a material part of the contract with the bondholders.

"6. That the Refunding Bonds of 1937 Class A in the amount of $2,701,000.00 and the Refunding Bonds of 1937 Class B in the amount of $520,000.00 described in the petition herein and sought to be validated in this cause will,

when issued in the manner provided in the resolutions authorizing their issuance, evidence merely an extension or renewal in a new form of the original outstanding bonded indebtedness to be refunded, which original indebtedness will not be extinguished by, but will be merged in the refunding bonds with like force and effect as to obligations as if the original bonded indebtedness had remained unrefunded by the issuance of such refunding bonds.

"7. That the proposed refunding bonds when sold according to law will constitute a valid continuation and extension of the obligations of the bonded indebtedness refunded, and the only property in City of Orlando which will not be subject to the levy of taxes to pay the obligations evidenced by the refunding bonds is such property as would be exempt from taxation under the provisions of the laws and Constitution which were in force and effect at the time of the incurring of the obligations evidenced by the issuance of the original bonds.

"8. That the taxes to pay the principal of and interest on said refunding bonds are required to be levied, assessed and collected at the same time and in the same manner as taxes are levied, assessed and collected for the current operating expenses of said City and that such taxes when levied will be collectible and payable in cash only and may not lawfully be paid in bonds or interest coupons.

"9. That the refunding bonds described in the petition herein will not be affected by or subject to the provisions of Chapters 16838, 16965, and 17401, General Laws of Florida, 1935.

"10. That the General Refunding Act of 1931, being Chapter 15772, General Laws of Florida, 1931, and Section 6 of Article IX of the Constitution as amended in 1930 fully

authorizes the issuance of said $2,701,000.00 Refunding Bonds of 1937 Class A and $520,000.00 Refunding Bonds of 1937 Class B, and their issuance has been duly provided for by the resolutions properly adopted by the City Council of City of Orlando.

"11. That the bonds sought to be refunded are now selling above par and have maintained such position in the market for the year last past or more; that consequently the giving of the notice of intention to call ninety days before the call date would be futile and is unnecessary and that a call made sixty days before the call date would be sufficient.

"12. That no cause has been shown why the refunding bonds described in the petition herein shall not be validated and confirmed."

The authorizing resolutions show that all of the bonds proposed to be refunded will not mature until many years in the future, but that they are callable at par at the option of the City of Orlando at any time prior to their maturity. It is also shown that the refunding bonds will bear an interest rate of not exceeding 4¼ per cent. per annum, whereas the bonds to be called and retired by means of the refunding plan all bear interest at rate of 5 to 5½ per cent. per annum.

In view of the nature of the city's outstanding indebtedness, and the low interest rates at which money is now procurable for municipal purposes, the City of Orlando is particularly interested in the issuance of refunding bonds that can *be sold,* as well as exchanged, so that the proceeds therefrom can be applied to the redemption of the bonds outstanding, in order to reduce the interest charges required to be borne by the taxpayers of the City of Orlando. We have held already in the cases of Folks v. County of Marion,

121 Fla. 17, 163 Sou. Rep. 298, and State of Florida v. City of Pensacola, 123 Fla. 331, 166 Sou. Rep. 851, that under the provisions of Florida law relating to refunding bonds, that refunding bonds may be lawfully issued without impairment of the taxing power that was applicable to the original bonds, and without reference to additional Section 7 of Article X providing for a tax exemption on homesteads, provided the refunding bonds so issued are proposed to be, and are, *exchanged,* bond for bond, with the original refunded by means thereof.

In view of the limitations of the Federal Constitution prohibiting States from impairing the obligation of contracts by statutes or constitutional provisions enacted after their making, it is clear that in the City of Orlando homesteads of all valuations will still remain subject to taxation in the future for the ultimate payment of the city's bonds that were outstanding on November 6, 1934, the date of ratification of the homestead tax exemption amendment (Section 7, Article X).

To presently call and retire such bonds by issuing an equal aggregate amount of refunding bonds with which to procure funds to call in and redeem the old bonds that bear higher interest rates than such refunding bonds, can in no way increase the burden of the tax obligation that already rests upon owners of homestead properties to contribute, from year to year, their proportionate share of the taxes necessary to liquidate the debts of the city that were outstanding on the date the homestead tax exemption amendment was ratified. On the contrary, the proposed refunding bond plan, if carried into execution, will result in a distinct saving to the taxpayers of all classes in ultimate outlay of tax revenues for carrying charges. It will therefore inevitably result in a substantial reduction of the tax burden

on all classes of taxpayers, including owners of homesteads taxed, both *in prasenti* and *in futuro*.

In the carrying out of such a plan of business-like municipal refinancing to take advantage of the opportunity to get a reduction in interest rates such as we have just described, required to be held frustrate and impossible of accomplishment merely because the proposed bonds are to be sold, instead of exchanged, on a promise that the taxing power pledged to pay them will not be affected by the homestead tax exemption amendment, or do the intendments of amended Section 6 of Article IX of the Constitution, and the statutes enacted to carry out the purposes of said last mentioned section, supply a sufficient answer sustaining the validity of the proposition now before the Court, in view of the fact that the sale of the refunding bonds, no different from their exchange for the bonds refunded, will not operate to lessen or impair the homestead exemption benefits conferred by additional Section 7 of Article X, but will be in aid of the objective of said last mentioned amendment?

A majority of this Court have already sustained the validity of a similar refunding plan by which refunding bonds, issued with the same tax security as the bonds refunded, can be exchanged, bond for bond, for the bonds outstanding at the time the homestead tax exemption amendment (Section 7, Article X) was adopted. See: Folks v. County of Marion, *supra;* State of Florida v. City of Pensacola, *supra.*

A majority of the Court have reached the conclusion that there is no difference in principle between the issuance of refunding bonds to be exchanged, bond for bond, for outstanding bonds refunded, and a like issue of refunding bonds projected to be issued and sold in advance of the normal maturity of the bonds to be refunded, where the

object of the issuance and sale of same is to procure funds with which to call in and redeem outstanding bonds of a like aggregate amount, as a means of reducing the carrying charges on the debt represented thereby, thereby taking advantage of an opportunity to·sell the refunding bonds at a time they can be. floated on a bond market of depressed interest rates for municipal securities. Such is the proposition involved in this case, and we agree with the court below in its holding that the two issues of refunding bonds involved in this proceeding are valid in substance, manner and form as proposed to be issued and sold by the obligor, City of Orlando.

Prior to the adoption of amended Section 6 of Article IX of the Constitution, authority to issue refunding bonds on the part of cities, towns, counties and taxing district was solely a matter of statutory cognizance. Since the adoption of that section the power to refund the public debt owed by the State's political subdivisions and municipalities is a' matter of constitutional prerogative subject only to the regulating power of the Legislature to prescribe how the exercise of the prerogative shall be accomplished and evidenced. By the adoption of this amended section of the Constitution, it is now recognized that in substantial effect, the issuance of refunding bonds is but the subrogation in law of the takers of such refunding bonds to the security and remedies possessed by the holders of the bonds refunded. This is so because the amended section in question provides in terms that refunding bonds may, when issued exclusively for the purpose of refunding the bonds or interest thereon of counties, districts or municipalities be so issued without being subject to the limitations of the Constitution as to approval at an election of freeholder electors which is required when a new funded indebtedness is to be

created in the nature of a bond. It is thereby recognized that refunding bonds are ordinarily but a renewal, extension and continuance of the obligation implied in the bonds refunded, absent a contractual acceptance of something less on the part of the taker of such refunding bonds arising out of their consensual provisions.

We hold therefore that it was within the corporate authority of the obligor, City of Orlando, to covenant that the provisions of additional Section 7 of Article X of the Constitution providing a tax exemption on homesteads, should not be applicable to refunding bonds issued and sold under amended Section 6 of Article IX of the Constitution, and Chapter 15772, Acts 1931, 'for the purpose of retiring original indebtedness represented by other prior bonds which were issued and outstanding at the time said additional Section 7 of Article X was adopted, where the original indebtedness represented by the outstanding bonds refunded had already prior to the adoption of the homestead tax exemption amendment aforesaid, pledged to their payment the full faith and credit of the issuing municipality, and where the refunding bonds and the plan of issuing same as evidenced by the authorizing resolution, embody a provision pledging to the payment of such refunding bonds a direct annual tax upon all property within the obligor municipality, except only such property as would be exempt from such taxation under the provisions of the laws and Constitution of Florida in force and effect at the time the indebtedness evidenced by the bonds refunded was originally created.

Refunding bonds of the character last above described operate in contemplation of law as an ordinary conventional subrogation whereby, through the contract of the takers of the refunding bonds entered into with the obligor municipality at the time of the acceptance or purchase of such

refunding bonds, the takers of such refunding bonds become, under the provisions of amended Section 6 of Article IX of the Constitution, and the terms of their contracts, entitled to the securities and rights of the creditors whose debts were satisfied by means of the refunding bond proceeds derived from their sale, the terms and provisions of subsequently adopted Section 7 of Article X and other subsequently enacted provisions of law being no more applicable to the subrogees than to the original creditors whose subrogated securities and rights have been transmuted by the act of conventional subrogation, into rights and securities belonging to the holders of the refunding bonds as subrogees.

There was a covenant in the refunding bonds, and in the resolution authorizing same, to the effect that the City of Orlando would not accept payment of tax levied for operating expenses, unless there was paid at the same time, the tax levied to pay the interest on, and to provide a sinking fund for, the payment of the principal of the said refunding bonds, notwithstanding the provisions of Chapter 16838, Acts 1935. The court below upheld the validity of the stated covenant and we affirm its decision on the authority of what was held by us in the similar case of State of Florida v. City of Pensacola, 123 Fla. 331, *supra*.

The Circuit Court also held that since the bonds involved in this case were refunding bonds issued under and by virtue of Chapter 15772, Acts 1931, *supra,* that Chapters 16965 and 17401, Acts of 1935, have no application thereto. We likewise affirm the Circuit Court's decree on that point on authority of the decision last above cited.

Under Chapter 15772, Acts 1931, the authority to sell refunding bonds for cash, and to make application of the proceeds thereof to the payment of the outstanding bonds

refunded, is not conditioned upon the voluntary surrender for retirement, of the bonds refunded, where the refunded bonds, as in this case, are by their terms and provisions legally callable at the option of the municipality obligor, upon payment of the par value thereof with interest. When, by their provisions, municipal bonds are made callable prior to the date of their maturity, such bonds are to be deemed redeemable by payment upon the call date, within the purview of Sections 8 and 11 of said Chapter 15772, Acts 1931, and the Circuit Court was correct in so deciding, the willingness *vel non* of the holders of the bonds refunded to surrender them after they have been called for payment being immaterial. The purpose of the 1931 General Refunding Statute was to advance the remedy of refunding, and its provisions should be liberally construed to the end of a practicable and utilitarian operation of the Act in cases where the letter of the Act leaves unclear the proper course of action to be followed in a particular situation.

The bonds to be refunded provide that notice of intention to redeem same shall be given sixty days prior to the date set for redemption. It is also provided that ninety days' notice prior to the date of interest payments shall be given and privilege extended to the holders of the bonds to tender the same for payment at prices below par and accrued interest. The record in this case shows that all of the bonds have been selling at par and are to be redeemed at par, upon call.

The ninety days' notice and the opportunity required to be given bondholders to tender their bonds for payment below par, has no application to a situation where it is contemplated, as here, that the bonds shall be peremptorily called for payment pursuant to their provisions, and not merely brought into negotiation for redemption on some

satisfactory basis less than par. And the Circuit Court properly so held and it follows that its decree to that effect must be affirmed.

It is therefore considered, adjudged and decreed by this Court that the Circuit Court's validation decree, in manner and form as entered, and herein appealed from, be and the same is hereby affirmed; and that mandate in conformity with this judgment of the Supreme Court do issue within ten days as provided for by Section 5108 C. G. L., Chapter 11854, Section 1, 2, Acts 1927, if no petition for rehearing has been filed within that period.

Affirmed.

WHITFIELD, C. J., and TERRELL, J., concur.

ELLIS, P. J., and BROWN and BUFORD, J. J., concur specially.

BUFORD, J. (concurring specially).—As is stated in the majority opinion, the majority of this Court has heretofore held such refunding bonds as are contemplated to be issued pursuant to the determination of this case are valid and that taxes to produce funds with which to pay the same may be levied upon all property upon which taxes could be levied to pay the original bonds which are now proposed to be refunded, including homesteads of all values.

I have heretofore, and do now, entertain the view that refunding bonds constitute a new contract which no one may be compelled or required to enter into, and that such new contract is subject to all statutory and constitutional provisions that may exist at the time such new contract is made. For this reason it appears to me that there is no sound logic supporting the proposition that because homesteads were taxable to pay the original bonds such homesteads remain, regardless of the constitutional inhibitions, subject to the levy and assessment of taxes to produce funds

to pay off the obligations evidenced by the contract made subsequent to the adoption of the so-called Homestead Amendment.

Of course, I recognize that it is highly expedient for the taxing units to refund their various bond issues and it would have been a wise thing for the framers of the Constitutional Amendment to have provided that all homesteads would be subject to taxation to produce funds with which to pay off debts existing at the time the amendment was adopted.

A majority of the Court, however, have heretofore determined this question as is indicated in the majority opinion and the view so expressed has become the law of this jurisdiction. I yield my personal views to the legal principle so established and, therefore, concur in the majority opinion.

ELLIS, P. J., concurs.

BROWN, J. (concurring specially).—While I have not changed the views expressed in the opinion written by me in the case of Folks v. Marion County, 121 Fla. 17, 163 So. 298, 102 A. L. R. 659, I feel that it is now my duty to yield my personal views to the precedent established by the decision of the majority in that case, to the end that this much vexed and highly important question may be definitely decided and set at rest. I therefore join Mr. Presiding Justice ELLIS and Mr. Justice BUFORD in concurring in the decision of the Court in this case affirming the decree of the court below validating the issue of refunding bonds.