STATE v. CITY OF CLEARWATER

169 So. 602.
Division B.
Opinion Filed July 28, 1936.

*Chester B. McMullen,* State Attorney, for Appellant;
*John C. Polhill* and *S. E. Simmons,* for Appellee.

BUFORD, J.—The appeal in this case brings for review a decree validating a refunding bond issue proposed by the City of Clearwater, Florida.

It is proposed to issue refunding bonds of Series "A" in the principal amount of $4,365,500.00; of Series "B" in the principal amount of $413,890.00; of Series "C" in the principal amount of $331.010.00, and to issue what are termed delinquent tax notes in three series as obligations for the payment of interest on the original bonds which was in default, past due and unpaid on July 1, 1934. These notes bear no interest and delinquent tax notes, Series "A," are to be in an amount equal to the unpaid interest accrued to July 1, 1934, on the outstanding bonds to be refunded by the above mentioned Series "A" refunding bonds. Delinquent tax notes, Series "B," are to cover like accrued interest on the bonds to be refunded by Series "B" refunding bonds and the delinquent notes, Series "C," are to cover like unpaid interest on the outstanding bonds to be refunded by Series "C" refunding bonds.

The bonds are proposed to be issued under authority of Chapter 15,772, Acts of 1931.

The record shows that the City of Clearwater has an outstanding bonded indebtedness of $5,110,400.00 upon which default has accrued and continued for several years past.

The record shows that default has occurred in interest payments under the accumulated amount of past due and unpaid interest approximately $750,000.00.

The city, finding itself in this condition, has negotiated with the bondholders for the purpose of effectuating an agreement whereby the city could adjust its outstanding bonded indebtedness by the issuance of refunding bonds such as are here under consideration. This suit is for the purpose of determining the legality of such refunding bonds without the same being submitted to a vote under the provisions of Section 6, Article IX of the Constitution.

It is pointed out that the outstanding bonds of the city were issued over a period of years beginning with the year 1910. In the year 1910 the territorial limits of the Town of Clearwater were as defined by Chapter 6046, Acts of 1909. The town continued with such territorial limits until 1924, when the limits were extended. This extension of the territorial limits was validated and confirmed by Chapter 10,391, Acts of 1925, with the condition that the annexed territory should not be taxed for the payment of the then existing bonded indebtedness of the Town of Clearwater which had been incurred for purposes other than those specifically enumerated in Section 3 of the statute. Under this Act the Town of Clearwater was designated the City of Clearwater. In 1925 Chapter 10394 was enacted by the Legislature and this Act annexed an additional territory to the city upon the condition that such additional territory should not be taxed for the payment of any of the then existing bonded indebtedness of the City, regardless of the purpose for which such indebtedness had been incurred.

The city has continued to exist since 1925 with its corporate limits as defined in Chapter 10391 and 10394, Acts

of 1925, with exception of the exclusion of a small portion of the territory which was effectuated by the passage of Chapter 16,362, and 16,363, Acts of 1933.

So it appears that all of the territory of the City of Clearwater is liable to taxation for the payment of bonded indebtedness incurred since the effective date of Chapter 10391 and Chapter 10394, which was April 24, 1925, while the territory annexed by Chapter 10391 is liable only for some of the bonds issued prior to that annexation and that territory which was annexed by Chapter 10394 is liable for no part of the bonds issued prior to that annexation, and the territory embraced in the Town of Clearwater prior to 1925 annexation continues liable for full payment of the bonds issued prior to the annexation and is liable pro tanto for all bonds issued after annexation.

The record shows that in the classification, as above stated, of the city's obligations, the outstanding bonded indebtedness, will be preserved by the issuance of the refunding bonds involved in this case. That is the different series of refunding obligations will correspond to the original bonds insofar as the obligations of the property within the territory to pay the tax necessary to redeem the obligation is concerned. The bonds, subject to the above mentioned limitations, will be issued in exchange for the principal outstanding bonds. They are to be 30-year refunding bonds and are to be subject to prior redemption upon any interest payment date at par and accrued interest. They will bear interest at different rates during that term ranging from 2 to 5 per cent per annum but in no event will the interest rate on any refunding bonds be greater than the interest rate provided in the original bonds refunded.

A salient feature of the proposed refunding is the provision which is being made for the payment of accrued de-

linquent interest. The above mentioned delinquent tax notes are to be exchanged for, and at the face value of, delinquent interest coupons. They are to bear no interest. The classification applicable to the refunding bonds will be applicable also to those notes so as to preserve the liability as limited by the legislative Acts above mentioned. The notes are to have no definite maturity date but will be payable as and when the special fund to be established for the payment of such notes will justify such payment. The city will have the right to redeem them at any time before July 1, 1938, at 20% of the face amount and at any time thereafter at 25% of the face amount. It is provided in the resolutions that the notes will be accepted in payment of a like amount of certain of delinquent taxes and special assessments pledged to such notes.

The City of Clearwater on June 2, 1936, filed its petition seeking validation of these bonds and delinquent tax notes. The refunding resolution was attached to the petition and by apt words made a part thereof.

The statutory notes were issued, published and served. The States Attorney filed an answer. The answer presented certain questions of law to be determined. It is unnecessary to quote the answer here. It is sufficient to state *ad seriatim* the questions which have been presented on the appeal for our consideration and determination.

After hearing, decree was entered validating the bonds and the State entered its appeal.

The first question is:

"Are Sections 1 and 5 of Article IX of the Constitution of the State of Florida violated by the issuance of refunding obligations classified according to series, the obligations of each series to be payable from taxes levied upon property located within different parts of the territorial

limits of the municipality, where such classification is made for the purpose of continuing without change the tax liability of different parts of the municipality as such tax liability exists with respect to the outstanding indebtedness to be refunded by virtue of statutory provisions incident to the annexation of additional territory to such municipality?"

Under this question the appellant contends that the proposed refunding bond issue will violate Sections 1 and 5 of Article IX of the State Constitution. It is not necessary for us to discuss this question at any length because it has already been answered adversely to the appellant's contention in the case of Hayes v. Walker, 54 Fla. 163, 44 Sou. 747; and also in the case of State v. City of Miami, 101 Fla. 292, 134 Sou. 608. Like contention was made in the Miami case and there, as here, the appellant relied on 12 C. J. 1007, Johnson v. City of San Diego, 109 Cal. 468, 42 Pac. 249, 30 L. R. A. 178, and the additional cases of Moore v. City of Pittsburgh, 154 Pa. 185, 98 Atl. 1037; Layton v. New Orleans, 12 La. Annotated 515; White v. City of Atlanta, 134 Ga. 532; 58 S. E. 103, and in regard thereto we said:

"These cases undoubtedly support appellee's view, but they all treat instances where the Legislature peremptorily undertook to exclude territory from or bring it into the parent city and apportion the burden incident thereto in its discretion. Under the plenary power given the Legislature (Section 8, Article 8, Constitution of Florida) to regulate municipalities we would be inclined to follow the reasoning in these cases in a like situation, but the case at bar presents a different state of facts. We are not confronted here with the proposal of the parent city to issue refunding bonds as contemplated by Chapter 11855, Acts of

1927, but we are dealing with the parent city as enlarged by Sections 1921 and 1922, Revised General Statutes of 1920, as affected by Chapter 11617, Special Laws, extraordinary session of 1927. We are, therefore, driven to the conclusion that the instant question is ruled by the last named Act, and Section 24, Article III, of our Constittuion.

"Section 24, Article III, Constitution of Florida, in effect provides that the Legislature shall establish a uniform system of county and municipal government which shall be applicable except in cases where local or special laws are provided that may be inconsistent therewith. The territory annexed to Miami in 1925 came in with the express reciprocal guaranty that it would not be required to help pay the debt of the parent city previously incurred nor would the parent city be required to help pay any debt of the annexed territory."

And in the case of State v. City of St. Petersburg, 106 Fla. 742, 144 Sou. 315, the same question was involved and we held that:

"Under the Acts of the Legislature just mentioned, the several ordinances annexing zones 1, 2, 3 and 4 to the City of St. Petersburg are still in full force and effect and are still binding upon the relators because each of said subsequently enacted charter Acts expressly provides for continuing in full force and effect all pre-existing outstanding municipal ordinances not in conflict with the terms of the Acts themselves. A majority of the court are likewise of the opinion that despite the general terms of the legislative Acts referred to, there is no necessary conflict between the scheme of municipal taxation set up by such Acts, and a continued recognition of the validity of the annexation ordinances as a limitation upon the city's right to tax the annexed territory for prior debts.

"The annexation ordinances were passed under a general law of the state in force at the time relator's bonds were issued. See Section 3054 C. G. L., *et seq.* The provisions of such general law, while not amounting to a contract between the City of St. Petersburg and the taxpayers of the annexed territory, were nevertheless intended to confer upon the inhabitants of the territory annexed, a valuable guaranty of law that the annexed territory would not thereafter be held liable to taxation for debts issued by the city before the annexation took place, unless future legislation should be passed expressly repealing such guaranty and making such annexed territory so liable."

So, instead of this being an objection to the validity of the proposed refunding procedure, it appears that this classification was required to be preserved because otherwise the refunding bonds would be issued, carrying with them a pledge of security that did not exist in behalf of the original bonds.

The second question is:

"Are the refunding bonds and delinquent tax notes proposed to be issued by the City of Clearwater invalid because by the terms and provisions contained therein and the resolution authorizing their issuance the City of Clearwater is obligated to levy taxes for the payment thereof upon all homesteads located within its territorial limits, notwithstanding the provisions of Section 7, Article X, of the Constitution of the State of Florida and Chapter 1760, Laws of Florida, 1935, specifically exempting from taxation homesteads up to the valuation of $5,000.00?"

This question was determined adversely to the appellant in the case of Folks v. Marion County, 121 Fla. 17, 163 Sou. 298, and in Fleming v. Turner, opinion filed December 2, 1935, reported 165 Sou. 353.

The third, fourth and fifth questions are of similar import and, therefore, may be treated together. They are as follows:

Third. "Has the City of Clearwater the right to issue refunding bonds and delinquent tax notes where the terms and provisions contained therein and in the resolution authorizing their issuance violate the provisions of Chapter 16853, Laws of Florida, 1935?"

Fourth. "Has the City of Clearwater the right to issue refunding bonds and delinquent tax notes where the terms and provisions contained therein and in the resolution authorizing their issuance violate the provisions of Chapter 17401, Laws of Florida, 1935?"

Fifth. "Has the City of Clearwater the legal power to issue refunding bonds and delinquent tax notes wherein by the terms of the resolution and the terms and provisions of the refunding bonds and delinquent tax notes the municipality covenants that the rights and remedies for the enforcement of the indebtedness refunded by said refunding obligations will appertain to said refunding obligations and the taxes securing the same, independently of any restrictions or limitations thereon enacted by the Legislature of the State of Florida since January 1st, 1931, and containing a special covenant to the effect that said municipality will not avail itself of the provisions of Chapter 16965, Laws of Florida, 1935?"

Questions presented here were likewise presented to us in the case of State v. City of Pensacola, opinion filed March 26, 1936, and reported 166 Sou. 851, and were disposed of adversely to the contention of the appellant in the very able opinion prepared in that case by Mr. Justice Davis, in which it was said:

"The statutory refunding powers conferred upon cities,

counties and taxing districts by the said Florida General Refunding Act being in execution and furtherance of the constitutional refunding bond powers set forth in amended Section 6 of Article 9 of the Constitution, the obligation of the authorized refunding bonds provided for under Chapter 15772, *supra,* is no more to be held limited, abrogated or impaired by the provisions of Chapters 16838, 16965, and 17401, Acts of 1935, General Laws of Florida, than the obligation of the bonds refunded is to be regarded as limited, abrogated or impaired by said subsequently passed Acts had no refunding been attempted. This is so, because the last mentioned Acts, in the absence of some express provision specified to the contrary *in the Acts themselves,* are not to be *construed* as in anywise withdrawing or modifying the refunding powers separately conferred upon cities, counties, and taxing districts by amended Section 6 of Article 9 of the Constitution, as made effective by the Florida General Refunding Acts of 1931, to renew and extend the contractual obligation of their outstanding bonded debts on the same terms as to security, and subject to the same conditions and provisions of law that were made applicable at the time the outstanding bonds were originally issued, any subsequently passed constitutional provisions of statutes to the contrary notwithstanding, unless expressly so provided in the contract, or so specified by the Legislature with respect to the statutory authority of cities, counties and taxing districts to issue refunding bonds pursuant to the constitutional permission therefor given by amended Section 6 of Article 9 of the Constitution.

"It follows that the holding of the Court below to the effect that Chapters 16838, 16965 and 17401, Acts 1935, and similar statutes do not apply to refunding bonds issued under Chapter 15772, Acts 1931 (Florida General Refund-

ing Act) was correct and must be approved by this court on this appeal."

The sixth question is:

"Does the pledge to the payment of the delinquent tax notes of all unpaid special assessments heretofore imposed by the city and all unpaid taxes levied for the year 1930 and prior years constitute a pledge of a new source of revenue so that the delinquent tax notes cannot properly be regarded as refunding obligations and therefore the issuance of them without the approval of the qualified freeholders residing in the City would be in violation of Section 6, Article IX of the Constitution of the State of Florida?"

It is contended by the appellant that the provision in the resolution pledging the "unpaid special assessments heretofore imposed by the City and all unpaid taxes levied for the year 1930 and prior years" constitute a pledge of a new source of revenue for the payment of those obligations.

We do not agree with this contention.

The obligation to pay the interest on the bonds now sought to be refunded was a general obligation of the City except for the limitations hereinbefore mentioned and the payment of that interest remains a general obligation until the interest shall have been paid.

It, therefore, follows that whatever may be realized by the City frou the collection of those delinquent taxes and special assessments would be available for the payment of this obligation in its original form. The special assessments were already pledged to the payment of the outstanding bonds.

No new source of revenue is involved. This is an old source of revenue which may yet yield some returns. It will be noted that Sections 17 and 21 of the General Refunding Act, Chapter 15772, Acts of 1931, specifically authorize

the pledge of funds which may be derived from such delinquent taxes and special assessments. The taxing power of the municipality is pledged for the payment of the bonds and the interest and the collection of these delinquent taxes and special assessments is an exercise of the taxing power.

So we do not think that the objection is tenable.

Questions 7, 8 and 9 are grouped for discussion by counsel so we shall consider them together. They are as follows:

Seventh. "Has the City of Clearwater by Section II of the Refunding Resolution violated the provisions of Section 22 of Chapter 15772, Laws of Florida, 1931, by postponing the time for levying taxes to pay the principal of the refunding obligations?"

Eighth. "Does a provision in a refunding resolution obligating a municipality to levy a tax in a certain amount for interest payment on refunding bonds for a certain period of time violate the provisions of Section 22 of Chapter 15772, Laws of Florida, 1931, when it affirmatively appears that a tax levy for a smaller amount might prove to be sufficient?"

Ninth. "Is the City of Clearwater authorized to obligate itself in and by the terms of a refunding resolution to levy a tax in one fiscal year sufficient to provide for the payment of interest due on the refunding bonds in the next fiscal year?"

The contention is that providing in the resolution for the levy of not less than $200,000.00 in each of the years 1936 to 1941 for the payment of interest on refunding bonds violates Section 22 of Chapter 15772, Acts 1931. The provision of the resolution is found in Section 10 thereof, as follows:

"There is hereby directed to be annually levied and collected, as long as any refunding bonds may be outstanding,

a separate and special tax sufficient to produce the sum required for the payment of interest upon said refunding bonds as that interest matures; provided, however, that in the fiscal years 1936 to 1941 inclusive, the tax to be levied for the payment of interest on said refunding bonds shall in no event be less than $200,000.00 for each of such years. In determining the rate of tax necessary to be levied in the fiscal year 1942 and in each fiscal year thereafter, for the purpose of producing an amount sufficient to pay the interest on said refunding bonds, the average percentage of collectibility of taxes during the three years immediately preceding each year in which such levy is made shall be deemed to be the percentage of collectibility of taxes for the fiscal year then being levied for, and such rate of tax shall be levied which will be sufficient to produce the amount required for the payment of such interest upon the assumption that during such fiscal year the percentage of collectibility will be the same as the average for the three years immediately preceding; provided further than in the fiscal years 1942 to 1944, inclusive, the amount of tax to be levied for the purpose of paying interest on the refunding bonds shall in no event be less than $200,000.00 in each of such fiscal years."

Section 22 of Chapter 15772, *supra,* provides, in part, as follows:

"In each year while any of the bonds shall be outstanding there shall be levied by or under the authority of the governing board upon all taxable property in the unit, an ad valorem tax sufficient to pay the interest and principal of such refunding bonds and any sinking funds which may be provided for by the bonds, or by the proceedings authorizing the sale, provided, however, that when there shall be in any fund or funds provided for such bonds interest

and/or sinking fund, an amount exceeding the amount at that time required for such fund or funds, the ad valorem tax required by this Section for the current year may be reduced in the amount of such excess."

We hold that the provision above quoted from the resolution does not invalidate the refunding bond issue. It may be that if it should appear that so large an amount as $200,000.00 would not be necessary for the payment of the accruing interest that the covenant to levy that amount could not be enforced because, regardless of what the covenant embraced within the resolution may be, the holder of the municipal obligation is entitled to a levy no greater than that which will produce a fund sufficient to pay the outstanding maturing obligations.

We also observe that it is provided that whenever any surplus accrues in the fund for the payment of interest it is to be applied to the sinking fund for the payment of the bonds.

In State v. City of Miami, 116 Fla. 417, 157 Sou. 13, we held:

"Chapter 15686 directs that the full faith and credit of the city shall be pledged to the payment of the refunding bonds and authorize the establishment and maintenance of a sinking fund. The pledge of the proceeds to be received from such sales to the payment of the refunding bonds is merely one of the provisions agreed upon for the creation and maintenance of a sinking fund. The power to establish a sinking fund carries with it the power to prescribe the manner of creating such fund. In the absence of· express limitations the city is free to resort to any means not prohibited by law."

Questions 10 and 11 are as follows:

Tenth. "Are the delinquent tax notes proposed to be issued by the City of Clearwater invalid because they are without definite maturities?"

Eleventh. "Has the Court authority to validate the delinquent tax notes proposed to be issued by the City of Clearwater when neither the amount nor the denominations thereof are fixed by the resolution authorizing their issuance?"

It appears that what we said in the case of State v. City of Miami, *supra,* as follows—"It is also claimed that the refunding of certificates of indebtedness, to cover unpaid interest, are not legally provided for, because the exact amount and denominations thereof are not definitely fixed by the resolution of the City Commission. But the resolution does provide that certificates of indebtedness may be issued in an amount equal to all unpaid interest which shall have accrued upon the outstanding bonds up to the date they are exchanged for the refunding bonds, except the three per cent. of interest which must be paid in cash. Thus, the amount will be determined by the amount of interest due on the outstanding bonds at the date of the exchange. Although no exact figure can now be arrived at as to the amount of the certificates of indebtedness to be issued, the resolution does definitely prescribe a method of computing the amount of such certificates to be issued, and the amount of outstanding bonds is definitely fixed and the interest borne by the outstanding bonds is also definitely known. After the refunding bonds are delivered, it will be a mere matter of mathematical calculation to determine the amount of certificates of indebtedness to be issued to refund part of the interest thereafter accruing upon the refunding bonds. Thus while no definite amount of refunding certificates of indebtedness is now fixed, there is fixed

a definite means of arriving at that amount. 'That is certain which may be rendered certain.' This is sufficient for all practical purposes and also a sufficient compliance with Section 5107, Compiled General Laws of 1927,"—may be applied to the contention here presented. The only difference between the conditions existing in this case and those existing in the Miami case are that in the Miami case the certificates of indebtedness to cover accrued interest were to cover interest accruing to date of exchange, while in this case the certificates, or as they are called here, delinquent tax notes, are to cover the amount of interest which had accrued and become delinquent on or before July 1, 1934; and, while these obligations are uncertain as to dates of maturity, the amount of each is capable of definite ascertainment and if the holders of the delinquent interest coupons are willing to accept these indefinite obligations in exchange for what they now have, we know of no legal impediment which will preclude the municipality issuing such obligations.

For the reasons stated, the decree appealed from is affirmed.

So ordered.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.