STATE v. CITY OF WEST PALM BEACH.

174 So. 334.
Division B.
Opinion Filed January 11, 1937.

*J. W. Salisbury,* State Attorney, for Appellant;

*Paul W. Potter,* City Attorney, for Appellee.

BUFORD, J.—The appeal is from a final decree validating certain refunding bonds proposed to be issued by the City of West Palm Beach in Palm Beach County, Florida.

The City of West Palm Beach was established by Chapter 6411, Acts of 1911. From time to time various charter Acts were passed by the Legislature of Florida until finally Chapter 16,851 was enacted by the Legislature of 1935. That Act consolidated the governmental functions which had been theretofore delegated to the City of West Palm Beach and the District of West Palm Beach by Chapters 16,758 and 16,759, respectively. Under Chapter 16,851, Acts of 1935, the present municipality acquired all the rights, powers and privileges theretofore existing and all the rights, powers, privileges and duties of the city theretofore existing

and all the debts and liabilities of the district became and are now the debts and liabilities of the City. All of the valid judgments rendered against the District or against the Town or City of West Palm Beach as theretofore existing became judgments against the City so created by the latter Act and the City may levy taxes against such properties within the City as either the District or the former City could have levied.

From and after January 1, 1912, the City's predecessors issued some forty-six separate series of bonds of which there is now outstanding for principal the amount of $15,456,-500.00, of which the sum of $4,493,500.00 has been reduced to judgment and $10,693,500.00 is represented by bonds either matured or unmatured which have not been reduced to judgment. Interest upon this bonded debt which accrued in the fiscal year ending September 30, 1933, and prior fiscal years in the sum of $800,000.00 is outstanding and unpaid.

The predecessors of the present City incurred a floating debt in the sum of $657,578.86. Of this amount $347,-355.16 has been reduced to judgment and $310,223.70 is represented by a mortgage, certificates of indebtedness and paving lien certificates. There is also due on the last above mentioned items for interest which accrued in the fiscal year ending September 30, 1933, and prior fiscal years, the sum of $25,000.00.

Negotiations to refund and fund the indebtedness of the City of West Palm Beach culminated in the enactment of two ordinances by the City of West Palm Beach on the 26th day of August, 1936, authorizing a readjustment of the entire indebtedness of said City. The substantial difference between the two ordinances is that one ordinance provides for the issuance and exchange of refunding bonds

for an amount equal to 75% of the principal amount of the outstanding bonded debt of said City and the refunding of interest which accrued during the fiscal year ending September 30, 1933, and prior fiscal years, by the issuance and exchange of non-negotiable, non-interest-bearing certificates of indebtedness to an amount equal to the amount of interest to be thereby refunded; while the other ordinance provides for the issuance and exchange of refunding bonds for an amount equal to 75% of the principal amount of the floating debt of said City and the funding of interest which accrued during the fiscal year ending September 30, 1933, and prior fiscal years by the issuance and exchange of non-negotiable, non-interest-bearing certificates of indebtedness of said City for an amount equal to the interest claims to be thereby funded and extended.

The interest rate upon the refunding and funding bonds commences at 2% for the period beginning August 1, 1941, and gradually increases until it reaches 5% at August 1, 1956, to August 1, 1961, the dates of maturity of said refunding and funding bonds. The interest contemplated is at the average rate of 3.5% as compared to 6% obtaining as to the indebtedness to be refunded and funded.

It is also observed that the ordinances disclose that 25% of the face amount of the certificates of indebtedness to be issued and exchanged to each holder of an interest claimed thereby refunded and extended shall be due and payable on or before September 1st in each of the years 1937, 1938, 1939, and 1940 at 10% of the face amount thereof.

It is shown that by the carrying out of the refunding and funding set-up large amounts of money will be saved to the taxpayers of the Municipality. The figures are not material.

For the payment of the refunding and funding bonds and interest thereon and the above mentioned certificates of

indebtedness the full faith and credit of the taxing power of the City is irrevocably pledged.

The bonds contain the following provisions:

"This bond is issued by said City under authority of and in full compliance with Chapter 15772, General Laws of Florida, Acts of 1931, and with Sections 70 to 98, both inclusive of Chapter 16758, Laws of Florida, Acts of 1933, and pursuant to an ordinance duly passed and adopted by the City Commission of said City on the........day of.............., A. D. 1936, and is issued 'for the purpose of funding a like amount of valid subsisting debt of said City for the payment of which the City was obligated to levy taxes upon all property within its present territorial limits which was subject to taxation under the Constitution and laws of Florida, as they existed immediately prior to November 6, 1934.'"

By the terms of the ordinances they became effective only when approved by a majority of the votes cast in an election, in which a majority of the freeholders who were qualified electors residing in said City participated, to be held in the manner prescribed by law. By proper resolution the City Commission called and caused to be held the election. The election was held on October 6th, 1936. The record shows that at that time there were 3,076 freeholders who were qualified electors residing in the City who were entitled to participate in said election. A total vote of 2,046 votes were cast upon each of the propositions submitted to the electors in said City and who were qualified to participate in said election. One thousand, nine hundred and seventy-three votes were cast in favor of the issuance and exchange of the refunding bonds. One thousand nine hundred and forty-six votes were cast in favor of the issuing of certificates of indebtedness with which to refund interest on refunding bonds which accrued on bonds on or before Sep-

tember 30, 1933. One thousand, nine hundred and thirty-four votes were cast in favor of the issuance and exchange of funding bonds and 1,926 votes were cast in favor of the issuance of certificates of indebtedness with which to fund the interest which had accrued on or before September 30, 1933, on the principal outstanding floating indebtedness of the City.

It, therefore, appears that the issuance of the refunding bonds, the funding bonds and interest certificates to cover interest on each class of indebtedness was approved and authorized by the vote of the freeholders. The result of the election was duly declared and on October 22, 1936, appellee filed its verified petition seeking validation of the securities involved. On the same date the Circuit Judge entered an order against the State of Florida requiring it to appear on the 17th day of November, 1936, and on the same date the Clerk of the Circuit Court issued a citation to the citizens and taxpayers requiring them to appear on November 17, 1936, to show cause why the refunding and funding bonds and certificates of indebtedness should not be validated and confirmed. On October 26, 1936, the State's Attorney accepted service of copy of the petition and order of the Court. On November 17th the State's Attorney filed answer on behalf of the State of Florida to the petition for the validation of the securities involved therein.

The petition and answer raised questions which were presented to the Court on November 17, 1936, and on the 18th day of November, 1936, the Circuit Judge entered a final decree *nunc pro tunc* as of November 17th, overruling the objections raised by the answer and validating and confirming the refunding and funding bonds and certificates of indebtedness and from that order this appeal is taken.

The appellant in the brief filed here states 18 questions

for our determination. We find, however, that the appellee has more concisely stated the matters which we must determine in 5 questions. The questions thus presented are as follows:

"First Question. Does the City of West Palm Beach in Palm Beach County, Florida, have the power and authority under Chapter 15772, Laws of Florida, Acts of 1931, and under Sections 70 to 98, both inclusive, of Chapter 16758, Special Laws of Florida, Acts of 1933, to issue and exchange refunding and funding bonds of said City for the purpose of refunding and funding bonds, judgments upon bonds and the floating indebtedness of said City?

"Second Question. Are the refunding and funding bonds and certificates of indebtedness proposed to be issued by the City of West Palm Beach and to be exchanged for principal and interest claims respectively of the bonded and floating debt of said City, invalid, because by the terms and provisions contained therein and in the ordinances authorizing their issuance, the City of West Palm Beach is obligated to levy taxes for the payment thereof upon all homesteads located within its territorial limits, notwithstanding the provisions of Section 7, Article X, of the Constitution of Florida, and Chapter 17060, Laws of Florida, Acts of 1935, specifically exempting from taxation homesteads up to the valuation of five thousand dollars?

"Third Question. Is the City of West Palm Beach authorized to obligate itself in and by the terms of refunding and funding ordinances to levy a tax in one fiscal year sufficient to provide for the payment of interest due on the refunding and funding bonds in the next fiscal year and where the terms and provisions contained therein and in the ordinances authorizing their issuance violates the pro-

visions of Chapters 16838, 17401 and 16965, Laws of Florida, Acts of 1935?

"Fourth Question. Are the certificates of indebtedness proposed to be issued and exchanged for interest claims upon the bonded and floating debts of the City of West Palm Beach, invalid, because the ordinances authorizing the issuance of said certificates provide that twenty-five per cent. of the face amount thereof issued to each holder of an interest claim to be thereby refunded and extended shall be due and payable on or before the first day of September in each of the years 1937, 1938, 1939 and 1940 at ten per cent. of the face amount thereof, while the propositions submitted to the qualified freeholders of said City in an election called for the purpose of approving or disapproving said certificates, stated that said certificates should be redeemable at ten per cent. of the face amount thereof on or before four years after date thereof?

"Fifth Question. Can the territory annexed to the City of West Palm Beach by Chapter 7254, Laws of Florida, Acts of 1915; Chapter 7722, Laws of Florida, Acts of 1917; Chapter 9112, Laws of Florida, Acts of 1921; Chapter 9945, Laws of Florida, Acts of 1923; Chapter 11797, Laws of Florida, Acts of 1925; Extraordinary Session: Chapters 16758, and 16759, Laws of. Florida, Acts of 1933, which were consolidated and merged pursuant to Chapter 16851, Laws of Florida, Acts of 1935, now claim immunity from taxation to refund and fund respectively the bonded and floating debts of said city, portions of which were incurred prior to such annexation?"

The first question was answered in the affirmative by the Circuit Court and such ruling is supported by the opinions and judgments of this Court in the case of State v. Board of Public Instruction, 126 Fla. 142, 170 Sou. 602, and also in

the case of State of Florida and G. I. Ridgeway v. City of Daytona Beach, filed at this Term of the Court and not yet reported. It is not needful for us to say more than has been said in those two opinions.

The second question was answered by the lower court in the negative and in so far as it applies to the refunding bonds and certificates for accrued interest thereon, that was holding in line with the decisions of this Court in the case of State v. Clearwater, 169 Sou. 602, not yet reported in Florida Reports; and in Folks v. Marion County, 121 Fla. 17, 163 Sou. 298; Fleming v. Turner, 122 Fla. 200, 165 Sou. 353. The opinions and judgments in those cases were grounded upon the postulate that the refunding bonds constituted a continuation and extension of the original contract and that, therefore, the bondholders were entitled under the contract to have the tax levy made upon property as was authorized when the original bonds were issued. This condition, however, does not apply to the funding bonds issued to fund a floating debt as to which there was no prior contract for tax levies. These bonds and interest certificates constituted a new and independent contract for the payment of which the levy of a tax upon homesteads is prohibited under Section 7, Article X of the Constitution. Certainly, the municipality would not be authorized to issue these funding bonds and interest certificates to provide for the payment of accrued interest on the floating debt for which such funding bonds are to be issued without having been thereunto authorized by an election such as was held in the instant case; but, even the authority which accrued and became complete by the result of such an election would not authorize the municipality to tax homesteads which are made exempt by the provisions of Section 7, Ar-

ticle X of the Constitution to raise funds with which to pay such obligations.

The third question was answered by the lower court in the affirmative and that holding, insofar as it applied to the obligation contained in the refunding bonds and the payment of interest due on refunding bonds and interest which had become due and remained unpaid on the old bonds which are to be refunded was in line with the opinions and judgments of this Court in the cases of State v. City of Pensacola, 123 Fla. 331, 166 Sou. 851, and State v. City of Clearwater, 125 Fla. 73, 169 Sou. 602. It is not necessary for us to here say more on this subject than was said in the case of State v. City of Clearwater, *supra*.

The fourth question was answered by the court below in the negative. With the limitations heretofore stated that question was properly answered. While it is true that the provision of the ordinances authorizing the issuance of certificates of indebtedness for the purpose of refunding interest and authorizing the issuance of certificates of indebtedness for the purpose of funding interest was not followed verbatim in submitting those two questions at the election, the differences appearing are immaterial. Section 11 of Chapter 14715, Laws of Florida, Acts of 1931, is as follows:

"Section 11. At said election the ballot used shall be a plain white piece of paper with such description of the issuance of bonds to be voted on, printed thereon as the authority calling the election may prescribe. A separate statement of each issue of bonds sought to be approved, giving the amount thereof and the interest rate thereon, together with such other details as may be deemed necessary to properly inform the electors, shall be printed thereon in connection with the question 'For bonds' and 'Against Bonds.'

Direction to the voter to express his choice by making an 'X' mark in the space to the right or to the left of said questions shall be stated on such ballot."

It will be observed that this provision of the statute does not require the proposition submitted to the voters to designate the maturity date of the obligations therein referred to. The Act requires that the proposition to be submitted to the voters should specify the amount of the issue of said certificates and the interest rate thereon. It affirmatively appears that the voters were appraised of the fact that two issues of certificates, one in the aggregate amount of $800,000.00 and the other in the aggregate amount of $25,000.00 were to be voted upon, and that such certificates of indebtedness would not bear interest. These were the only two essential requirements to be met and the additional information as to maturity dates was mere surplusage. Therefore, inasmuch as it affirmatively appears that the obligation of the taxpayer will not be increased by reason of any inconsistency in stated maturity dates and as no fraud is shown we hold that this inconsistency does not affect the validity of the obligations. In McQuillin on Municipal Corporations, Vol 5, p 1021-1023, the author says:

"In the absence of fraud, or attempt to mislead the voters, or express declaration in the law to the contrary, mere irregularities which do not prevent a full and free expression of opinion of the will of the electors, and change of result will not invalidate the election. But a disregard of mandatory requirements, or matters of substance, will vitiate the election and preclude valid contemplated action thereunder. * * *

"All presumptions are in favor of the validity of the election, and as said above it will not be vitiated by mere irregularities. Thus, mere irregularities in the ordinance

calling the election do not invalidate the bonds, especially where the statute so provides. Furthermore, a bond election will not be held invalid on account of a disregard of merely directory provisions of election laws, where such a disregard would not render an election for municipal officers invalid. Likewise, the fact that the manner of making municipal election returns has not been prescribed by ordinance, as required by statute, does not invalidate the election, where there was a fair canvass and declaration of the result of the election and no fraud is claimed. So the mere fact that the ballots do not state the purpose of the expenditure is not fatal where there is no possibility or claim that any voter was misled or prejudiced by the mistake. * * *"

The case of State v. Anderson, 75 Oregon 509, 147 Pac. 526; City of Perry v. Davis, 97 Kan. 369, 154 Pac. 1127; City of Albuquerque v. Water Supply Co., 24 New Mexico 368, 174 Pac. 217; and State, ex rel. Utah Savings & Trust Co. v. Salt Lake City, et al., 35 Utah 25, support this text.

The fifth question was answered in the negative by the court below and properly so.

The City of West Palm Beach acquires its authority under the provisions of Chapter 16851, Acts of 1935, when read in pari materia with Chapters 16758 and 16759, Acts of 1933, the result of which in this regard has been heretofore stated. Regardless of any former legislative enactments, the Legislature possesses plenary power under Section 8, Article VIII of the Constitution to abolish existing corporations and create a new corporation and by the Act make all outstanding obligations of the former corporation the obligations of the new corporation and to authorize the levy of tax on all taxable property within the territorial limits of the new corporation available for the payment of

such obligations. See State v. City of Miami, 101 Fla. 292, 134 Sou. 608; State v. City of St. Petersburg, 106 Fla. 742, 144 Sou. 313 and 145 Sou. 175; State v. Clearwater, *supra*.

We may say here that the record shows that all of the territory now included in the City of West Palm Beach was by legislative Act brought within the corporate limits prior to the adoption of the Homestead Amendment on November 6, 1934, now Section 7, Article X of the Constitution. So, we hold that the decree appealed from should be affirmed, except insofar as it validates the provisions of the funding bonds hereinbefore referred to and the certificates of indebtedness to procure funds with which to pay the interest which had accrued prior to September 30, 1933, on the floating debt, whereby the same appear to pledge tax to be levied upon homesteads as described in Section 7, Article X of the Constitution, and we direct that the decree should be reformed so as to eliminate this provision. When so reformed, the decree will stand affirmed.

So ordered.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.