STATE v. CITY OF SANFORD.

174 So. 339.
Division A.
Opinion Filed May 3, 1937.

172

*Murray W. Overstreet,* State Attorney, for Appellant;
*Fred R. Wilson,* for Appellee.

BUFORD, J.—The appeal is from final decree validating bonds of the City of Sanford in the sum of $5,900,000.00 in two series, "A" and "B," series "A" in the principal sum of $5,274,000.00 and series "B" in the principal sum of $626,000.00. Series "A" is to be exchanged for all the outstanding bonds and certificates of indebtedness of the City of Sanford except two issues designated "Public Utility Bonds" dated January 1, 1924, and "Improvement Bonds Series CC" dated July 1, 1926. On the latter bonds and certificates of indebtedness outstanding judgments have been obtained in the principal sum of $470,000.00.

The bonds and certificates of indebtedness to be refunded by Series "A" constitute the general obligations of the City and are not supported by special assessments or other revenue than general taxes. The special assessment bonds and certificates of indebtedness for the payment of which special assessments for public improvements are pledged, as well as the full faith and credit of the Municipality, are to be refunded by series "B." Therefore, all of the bonds sought to be refunded are the general obligations of the appellee Municipal Corporation for which its full faith and credit is pledged.

There is no question raised about the sufficiency of the resolution or the procedure involved in the issuing of the refunding bonds. The Municipality proposes to pledge for the payment of the refunding bonds Series "A" the delinquent taxes theretofore imposed by the City.

Both series of bonds are to be issued as general obligations of the municipality.

Appellant filed answer to the petition in which it objected to the issuance of refunding bonds in such manner as to raise the questions hereinafter referred to. The matter came on for hearing after proper notice to taxpayers and citizens and after taking testimony the lower court rendered a decree validating and confirming the refunding bonds. The testimony showed in effect the amount of the outstanding indebtedness and the character thereof, default in payments, failure to collect special assessments in season to pay the special assessments bonds, and insufficiency of the net income, revenue and profits of its water plant to pay interest on the public utility bonds.

The first question presented by appellant is as follows:

"Is the approval by the qualified electors of the appellee, City of Sanford, Florida, necessary to the issuance of refunding bonds as general obligations of the municipality, for the payment of which delinquent taxes theretofore levied for debt service and special assessments theretofore imposed are pledged, the appellant contending that such bonds are not merely an extension of time of payment at a reduced rate of interest of the bonds to be refunded, but that a new and additional source of revenue is pledged for the payment of the refunding bonds?"

"Special Assessment Serial Bonds" sought to be refunded and which were identified in the record as street improvement bonds for the payment of which special assessments ·

against abutting property were pledged, were issued under the provisions of Sections 106 and 107 of Chapter 9897, Acts of 1923, and Sections 3 and 4 of Chapter 9898, Acts of 1923, and Sections 11 and 12 of Chapter 9298, Acts of 1923. The certificates of indebtedness of July 1, 1927, were issued under the provisions of Chapter 13391, Acts of 1927. Bonds known as "bulkhead bonds" were issued under Section 119 of Chapter 9897, Acts of 1923, as amended by Chapter 11719, Acts of 1925. The statutes all expressly provide that in the issuance of such bonds the full faith and credit of the city shall be pledged for their payment and that they shall be the general obligation of the municipality. Therefore, that the refunding bonds are the general obligation of the municipality does not give them an additional resource or higher dignity than that incident to the original bonds.

The question presented has heretofore been decided by us adversely to the contention of the appellant. See State v. City of Clearwater, 125 Fla. 73, 169 Sou. 602; State v. City of Miami, 116 Fla. 517, 157 Sou. 13. The pledging of the special assessments which have been made and have not been collected does not impose an additional burden on the taxpayer generally, but simply provides the manner in which the City may use that resource which it already has if and when it is made available. There is no pledge of the taxing power involved other than that taxing power which attached to the original bonds. So long as the refunding bonds create no additional or increased liability on the part of the obligor, there is no necessity for submitting the question of issuance to the electorate. State v. City of Okeechobee, 99 Fla. 617, 127 Sou. 339.

The second and third questions may be considered together. They are:

"2. May the appellee, City of Sanford, Florida, issue, without the approval of the qualified electors thereof, refunding bonds as general obligations of the appellee to be paid primarily out of a levy of taxes and to be exchanged for special assessment bonds, which are general obligations of appellee, for the payment of which special assessments are pledged, but which special assessments have not been collected in season to pay said special assessment bonds?"

"3. May the appellee, City of Sanford, Florida, issue, without the approval of the qualified electors thereof, refunding bonds as general obligations of appellee, to be paid primarily out of a levy of taxes and to be exchanged for certain Public Utility Bonds which are general obligations of the appellee, for the payment of which the net income, revenue and profits of the utility are pledged but which net income, revenue and profits are not sufficient to pay said Public Utility Bonds?"

It appears to be the contention of the appellant that the municipality may not issue refunding bonds in lieu of special assessment bonds and certificates of indebtedness and public utility bonds which refunding bonds pledge the full faith and credit of the municipality because the original bonds pledged also special assessments and net revenue from the water plant.

In Klemm v. Davenport, et al., 100 Fla. 627, 129 Sou. 104, it was held:

"The principle is well established in this country that in addition to his proportion of a laid tax a taxpayer may be required to pay an additional amount to make up deficiencies caused by the neglect or inability of other taxpayers to pay their assessments and that such additional impositions do not violate constitutional inhibitions against double taxation nor

requirements of equality and uniformity, nor do they amount to the taking of one's property, without due process of law.

An *ad valorem* tax and a special assessment may be imposed on the same property at the same time and in addition to the primary imposition in either case the taxpayer may be required to pay an additional amount to make up deficiencies caused by neglect or inability of other taxpayers to pay their. assessments and such requirements will not impinge on constitutional inhibitions against double taxation, the requirement of equality and uniformity, nor do they amount to the taking of property without due process.

The ultimate test of the liability of a municipality for local improvements must be gleaned from the terms of the statute or contract authorizing them.

Under the terms of Chapter 9298, Acts of 1923, Laws of Florida, when bonds are issued the city is the sole and only obligation to the bondholder who is not concerned with the means used by the city to pay the bonds, and special assessments imposed thereunder do not constitute the only fund for the discharge of said bonds."

The primary obligation of all the bonds involved in this litigation is that to pay the bond, or to pay the bond in cash. Rountree v. State, 102 Fla. 246, 135 Sou. 888. See also State v. Baskin, 102 Fla. 329, 136 Sou. 262; State v. City of St. Petersburg, 117 Fla. 300, 157 Sou. 641.

The fourth question presented is:

"4. Are homesteads in the present territorial limits of the appellee, City of Sanford, Florida, assessable for taxes for the payment of the refunding bonds proposed to be issued by said City, notwithstanding the provisions of Section 7, Article X, of the Constitution of the State of Florida and Chapter 17060, Laws of Florida, Acts of 1935, specifically

exempting homesteads up to the valuation of $5,000.00 from taxation?"

This question has so often been determined adversely to appellant's contention by the controlling opinions of this Court that it appears hardly worth while to cite the authorities. However, we do so. Folks v. County of Marion, 121 Fla. 17, 163 Sou. 298, 102 A. L. R. 659; State v. City of Pensacola, 123 Fla. 331, 166 Sou. 851.; State v. City of Orlando, 126 Fla. 251, 170 Sou. 887; State v. City of St. Petersburg, opinion filed March 23, 1937.

The fifth question is as follows:

"May the appellee, City of Sanford, Florida, legally obligate itself by Section 7 of the Resolution providing for the issuance of the refunding bonds in question, to collect the taxes to be levied for the payment of said refunding bonds at the same time and in the same manner as other taxes which may be levied by the City contrary to Chapter 16838, Laws of Florida, Acts of 1935?"

The same question was raised in the cases of State v. City of Pensaocla, *supra;* State v. City of Clearwater, *supra;* State v. City of Orlando, *supra,* and in each case was resolved against the contention of the appellant.

The sixth question is as follows:

"Is the prohibition by Section 8 of the Resolution authorizing issuance of the refunding bonds of the acceptance by the appellee, City of Sanford, Florida, of anything but lawful money of the United States of America in payment or satisfaction of the taxes or special assessments levied for said refunding bonds valid, in view of the provisions of Chapter 17401, Laws of Florida, Acts of 1935?"

This question has been likewise determined adversely to the contention of the appellant in the three cases last above cited.

The seventh question is as follows:

"Is the appellee, City of Sanford, Florida, authorized and empowered by law to provide for the creation of a sinking fund for the payment, redemption, call or purchase of refunding bonds Series A in the manner set forth in sub-paragraph (a) of Section 7 of the Refunding Resolution?"

Sub-paragraph (a) of Section 7 of the Refunding Resolution is as follows:

"(a) To insure prompt and full payment of interest on the refunding Bonds, Series A, and to provide a sinking fund for the payment or redemption thereof, a tax shall be levied for each year beginning with the year in which the refunding Bonds, Series A, are issued, in an amount sufficient to raise a sum at least equal to the interest which will fall due in the ensuing year, if fifty per cent. (50%) of the levy is collected in the ensuing fiscal year. If, however, at the time the levy is made for any year, the percentage of collections for the immediately preceding fiscal year, is less than fifty per cent. (50%) of the levy the tax levy for the year for which the levy is to be made, shall be sufficient, assuming a rate of collections no higher than the preceding year, to produce in cash the amount required for interest on said refunding bonds. The proceeds of such taxes shall be paid into a special fund and used solely for the payment of interest on said refunding bonds, except that all moneys in such fund in excess of the interest requirements of the refunding bonds for the fiscal year for which the taxes were levied, shall be paid into a sinking fund. Moneys so paid into the sinking fund shall be applied exclusively to the retirement of Refunding Bonds, Series A, by purchase, call or payment in the manner herein provided. For the fiscal year in which the Refunding Bonds, Series A, shall mature, the City shall levy a tax in such an amount as shall

be sufficient, together with any sinking funds then in hand, to pay such bonds at their maturity. Notwithstanding any of the other provisions of this resolution, the City, so long as it is not in default in the payment of the principal of or interest on said Refunding Bonds, Series A, shall not be required to levy for debt service on said bonds during the fiscal years 1937-1938, 1938-1939, 1939-1940 and 1940-1941, a sum in excess of $97,500.00. Beginning with the fiscal year 1941-1942 taxes shall be levied for debt service in accordance with the terms of this resolution, it being the intention of this resolution that the tax levy for debt service when 100% collected, will provide for the payment of interest on the Refunding Bonds, Series A, together with at least an equal amount for principal retirement, subject, however, to the foregoing provisions with regard to percentage of collectability."

.The record shows that the above quoted provision of the Resolution may be based upon the general experience of the municipality in the collection of taxes. The result of the resolution is that any amount collected under a levy to raise money to pay interest which may be in excess of the amount necessary to pay the interest is to go into a sinking fund for the payment, redemption or purchase of bonds. A provision of this sort was approved by us in the case of State v. City of Clearwater, *supra,* which holding is supported by State, *ex rel.* Gillespie, v. Baskin, 102 Fla. 329, 136 Sou. 262, and Smith v. State, *ex rel.* Ally, 171 Fla. 513, 171 Sou. 513.

The eighth question is as follows:

"May the appellee, City of Sanford, Florida, issue Refunding Bonds under the General Refunding Act of 1931 (Chapter 15772) without providing in the resolution for the annual levy and collection of taxes for the interest on

said Refunding Bonds and the creation of a sinking fund for their payment at maturity?"

The General Refunding Act, Chapter 15772, Acts of 1931, does not contain any provision fixing the amount which shall be levied each year to provide for the payment of interest and the creation of a sinking fund to pay the principal of outstanding bonds. The refunding Resolution in the record here provides that a sufficient tax shall be levied to pay such interest and create a sinking fund sufficient to retire the refunding bonds at or prior to maturity. The provisions of the Resolution do not appear repugnant to the provisions of the Act. The Resolution simply provides that the tax authorities must take into consideration the percentage of collection of taxes during the past year in determining the amount of taxes that will be levied for the required purpose the ensuing year. A like question was presented in the case of State v. City of Clearwater, *supra,* and determined adversely to the contention of the appellant.

It has been held by us that the failure to provide, in the resolution authorizing the issuance of the bonds, for the levy of an annual tax did not affect the validity of the bonds. In other words, the duty to levy the tax would be a duty incident to the issuance of the bonds whether the resolution provided for it or not. Potter v. Lainhart, 44 Fla. 647, 33 Sou. 251; Ives v. Columbia County, 92 Fla. 30, 109 Sou. 236; Volusia County v. State, 98 Fla. 1166, 125 Sou. 375.

The ninth question presents in effect the same contention as is presented in the seventh question and may be likewise disposed of.

The tenth question is as follows:

"10. Is the provision by sub-paragraph (a) of Section 7 of the Resolution authorizing the Refunding Bonds for the levy by Appellee of taxes for debt service in the sum of

not more than $97,500.00 for the fiscal years 1937-1938, 1938-1939, 1939-1940, and 1940-1941 valid?"

The question does not go to the validty of the bonds and, therefore, what the result may be as affecting some future contingency is of no importance in this case.

The eleventh question is as followed:

"May the appellee, City of Sanford, Florida, in addition to the pledge of the net revenue of its water plant to pay interest on Series B refunding Bonds, deposit annually only an amount of said net earnings equal to one per cent. of the present amount of bonds to be refunded with Refunding Bonds Series B, now outstanding, said deposit to constitute a sinking fund for the purchase or call of said Series B Bonds in the manner provided in sub-paragraphs a, b and c of Section 5 of the resolution authorizing the issuance of said Refunding Bonds?"

This question, like the tenth, does not touch the validity of the bond issue, but only goes to the wisdom of the policy which has been approved by the adoption of the refunding resolution. The entire net proceeds from the source named is pledged in the refunding bonds as it was in the bonds being refunded and if the procedure proposed for the application of the fund should prove inadequate the bondholder will have his remedy to make the entire fund pledged available.

The twelfth question is of like import and may be likewise disposed of.

The thirteenth question is as follows:

"13. May the appellee covenant that so long as any of the Refunding Bonds may be outstanding it will not avail itself of the provisions of Chapter 16965, Laws of Florida, Acts of 1935, as it has attempted to do in and by the resolution authorizing said Refunding Bonds?"

The Act referred to provides for compromise, adjustment and settlement of bonded indebtedness of financially distressed municipalities of Florida. The statute was held not to be applicable to refunding bonds in the case of State v. City of Pensacola, *supra,* and State v. City of Clearwater, *supra.*

The fourteenth question is as follows:

"14. Do judgments against appellee constitute a 'funded debt' of the municipality for which Refunding Bonds may be issued under the provisions of Chapter 15772, Laws of Florida, Acts of 1931, known as the General Refunding Act of 1931?"

This question has been definitely determined in the affirmative in the cases of State v. Board of Public Instruction, 126 Fla. 142, 170 Sou. 602; State v. City of Daytona Beach, 126 Fla. 728, 171 Sou. 814, and State v. City of West Palm Beach, 174 So. 334, 127 Fla. 849.

It, therefore, appears that the decree appealed from is without error and should be affirmed.

So ordered.

Affirmed.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.