CITY OF CORAL GABLES v. STATE, *et al.*

176 So. 40.
Opinion Filed July 30, 1937.
Rehearing Denied September 8, 1937.

*Morton B. Adams* and *Carl L. V. Exselson* (New York City) for Appellant;

*A. Judson Hill,* for Appellee; Culley;

*Frank E. Bryant,* for Intervenors.

CHILLINGWORTH, Circuit Judge.—The City of Coral Gables sought to validate approximately $4,200,000.00 refunding bonds and $7,000,000.00 tax participation certificates, which were to be issued in exchange for old evidences of indebtedness in the approximate amount of $11,200,000.00 — including principal and interest — in full satisfaction, settlement, compromise and adjustment of the original indebtedness. The State Attorney filed an answer raising numerous legal objections. Culley, a taxpayer, intervened to attack the validity of four original bond issues outstanding in the amount of approximately $6,500,000.00 principal and $2,200,000.00 accrued interest, which were sought to be refunded. Several taxpayers intervened to uphold the action of the municipality. After hearing testimony, the Court validated all of the refunding bonds and tax participation certificates, but held that homesteads, exempt under the provisions of Section 7, Article 10 of the Constitution, could not be held liable for the payment of re-

funding bonds or tax participation certificates, issued to refund a stated account and three judgments procured against the municipality in tort actions.

The City appealed. It assigned as error that portion of the decree which prevented a levy of taxes against homesteads. The State Attorney filed an assignment of error alleging that the Court erred in entering the final decree, but filed no brief. The intervenor Culley assigned a number of errors, but rests his case almost entirely upon the contention that the bonds embraced in the first four original bond issues were void, because issued by the municipality as a loan of credit and appropriation of funds for a private corporation contrary to Section 10, of Article 9 of the Florida Constitution. His position is that the municipality cannot issue refunding bonds or tax participation certificates to compromise or satisfy void bonds. He also contends that tax participation certificates cannot be validated, nor can homestead property, exempt under Section 7, Article 10 of the Constitution, be taxed for the purpose of raising funds to pay them.

Culley presented considerable testimony tending to support his opposition to refunding the four original bond issues. He relies upon the decisions of this Court in City of Coral Gables v. Coral Gables, Inc., 119 Fla. 30, 160 So. 476, and State v. Town of Belleair, 125 Fla. 669, 170 So. 434. There is much in this record to justify the views expressed in City of Coral Gables v. Coral Gables, Inc., *supra*. In that case the assessment lien was held void but the City was held to have the right to proceed under its charter to make a valid assessment, there being ample authority for that purpose. No bondholder was before the Court. The validity of no bond was considered by the Court. No refunding bonds were involved. The property of the taxpayer was not held to be relieved from the obli-

gation of paying for the benefits derived from the expenditure of funds by the municipality.

In State v. Town of Belleair, *supra,* the facts clearly showed the issuance of bonds primarily, and almost exclusively, to promote private enterprises. The public was only incidentally interested. But even there, the bondholder was not deprived of his right to proceed against the properties specially benefited and improved by the proceeds of the bonds, to recover his claim.

In Coral Gables there was unquestionably much jugglery of municipal affairs, but it was typical of the era. A statement of the evidence here, would simply be a repetition of the story of fluctuating land values, unparalleled prosperity, the 1925 land boom, its disastrous collapse, the extreme deflation in Florida real estate values, the nation-wide economic depression beginning in 1929, and the gradual recovery beginning in 1933, as to all of which the Court will take judicial notice. Mc. Caskill v. Dekle, 88 Fla. 285, 102 So. 252; Reese v. Levin, 98 Fla. 397, 123 So. 809; Evans v. Tucker, 101 Fla. 688, 135 So. 305, 309; State v. City of Clearwater, 106 Fla. 761, 139 So. 377, 381; Smith v. Massachusetts Mut. Life Ins. Co., 116 Fla. 390, 156 So. 498, 506, 510; Burns Mortgage Co. v. Bond Realty Corporation, 47 F. (2nd) 985; Brite v. Howey Co., 81 Fed. (2nd) 840.

In addition, we have in the instant case the rapid growth of Coral Gables, its great expansion, its efforts at stabilization of its municipal affairs, its frustrated refunding plans and much litigation, finally resulting in the plan to issue these refunding securities which seems to be mutually advantageous to the taxpayers, the municipality and the bondholders.

However, it is to be observed in this case: that Culley did not testify and few of his witnesses are even taxpayers in Coral Gables; that there are no charges of actual fraud;

that there was no use of public funds for an unlawful purpose; that there was no exchange of bonds for property; that the City received cash in payment for these first four issues of bonds; that there was no objection by any taxpayer to the expenditure of any funds procured through any bond issue; there was no objection by the City or any taxpayer to the validity of these bonds, until years after the municipality has issued, validated, sold the bonds and had received the benefits of the funds received from them; that no court has ever held these bonds to be void even though the matter has been presented a number of times; that the action of one who might have purchased property in South Florida in 1929, at then prevailing market values, only to find that the actual value of the property later, and probably then, was far less than the market value, does not alone constitute any evidence of fraud or inequitable conduct; that refunding bonds of the City were approved by the freeholders twice, once by a vote of 329 to 23 and again by a vote of 566 to 179; that creditors holding approximately 90% in amount of the outstanding indebtedness have evidenced their willingness to accept these refunding securities; and that the mere showing that officers and stockholders of a private corporation having dealings with the municipality are also officers of the municipality, is not sufficient to establish the conclusion that the dealings were in violation of Section 10, Article IX, of the Constitution.

In this refunding bond validation proceeding the holders of the original bonds are not before the Court. Contrary to the contention of Culley, we feel that any decision upon the validity of the original bonds as such, would be futile as far as any definite settlement of litigation between the municipality and the holders of those original bonds. Suffice it to say, that the proof here fails to clearly show that the issuance of these bonds was primarily to promote a pri-

vate enterprise, and that there was involved only an inci-
dental public interest and benefit.

The debts of the municipality sought to be refunded ap-
pear to be disputed claims. The courts favor a fair com-
promise and settlement of disputed claims, when made in
good faith between competent parties, to put an end to
litigation. Durham Tropical Land Corporation v. Sun
Garden Sales Co., 106 Fla. 429, 138 So. 21; 5 R. C. L. 878.
While this viewpoint relates particularly to a private indi-
vidual and a private corporation, the situation with refer-
ence to a public corporation is somewhat akin. Certainly,
it is often the part of wisdom to compromise and avoid the
certain uncertainties (and other ills) of litigation. Even
as far back as 1884 the City of Pensacola arranged to refund
bonds of an original indebtedness at the rate of forty cents
for each dollar of the old bonds, coupons and judgments,
with accrued interest. The situation presented was dif-
ferent and the law enunciated not applicable here, but it
is interesting to note that this Court in Sullivan v. Walton,
20 Fla. 551, 557, said: "Looking at the whole matter, we
doubt whether one citizen taxpayer alone * * * can be heard
to assail and set aside a compromise of a bonded indebted-
ness of the city by which the debt is to be reduced hundreds
of thousands of dollars."

That the municipality has the power to compromise and
settle claims arising out of a subject matter concerning
which the municipality had the general power to contract,
if at the time of the settlement there was a *bona fide* rea-
sonable doubt or dispute as to the liability of the munici-
pality, not based upon a total lack of authority to incur the
debt, seems clear from the authorities. 5 R. C. L. 886,
19 R. C. L. 775, McQuillins Municipal Corporations (2nd
edition) Volume 1, page 951, Revised Volume 6, page 647-
652.

The tax participation certificates are to be issued to creditors in the amount of 50% of the principal of the outstanding indebtedness and interest. For 40½ years the City agrees to make certain annual tax levies for their payment. These funds constitute the sole source of payment for the certificates, which bear no interest, and are payable at no certain date. Certificates unpaid at the end of 40½ years are cancelled. That a municipality may issue tax participation certificates of the type here contemplated, and have them validated as obligations according to their tenor, and obligate itself to levy taxes for the payment of such tax participation certificates, even as against homesteads exempted under the provisions of Section 7, Article X, of the Constitution, also seems to be well settled. Chapter 15132, Laws of Florida, Acts 1931. State v. City of Coral Gables, 114 Fla. 326, 154 So. 234. State v. City of St. Petersburg, Florida, 117 Fla. 300, 157 So. 641. State v. City of Clearwater, 125 Fla. 73, 169 So. 602. Leon County v. State, 122 Fla. 505, 165 So. 666. City of West Palm Beach v. State, 127 Fla. 849, 174 So. 334.

Counsel for the City now concedes that the final decree was without error in declining to permit homesteads to be levied upon for the purpose of raising taxes to pay refunding bonds issued for three tort judgments. It is contended, however, that this does not apply to the stated account. In the decision of State v. City of West Palm Beach, supra, this Court reversed a decree of the trial court validating refunding bonds for the purpose of refunding a floating debt. A part of that floating debt embraced a stated account similar to the one here involved. We held that the refunding bonds and interest certificates sought to be issued and validated, constituted a new and independent contract for the payment of which the levy of a tax upon homesteads was prohibited by Section 7, Article X, of the

Constitution. The facts and the charter provisions here are not materially different. It therefore follows that the trial court in this case correctly held that the stated account could not be used as a basis for refunding bonds, supported by a levy against a homestead, exempt under Section 7, Article X, of the Constitution.

We, therefore, hold that the indebtedness created as a result of the issuance of the original bonds of the City of Coral Gables as well as the other indebtedness of the City, may be compromised and satisfied by these refunding securities sought to be validated by the City of Coral Gables. In this opinion, we have discussed each question, assigned as error and briefed, by those who complain of error in the court below. No error in the decree validating the refunding securities having been made to appear, the decree should be affirmed.

Affirmed.

ELLIS, C. J., and TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.

WHITFIELD, J., absent because of sickness.